HILL SESSIONS v. THE STATE.

*No. 1164.   Decided January 21st, 1897.*

1. **Accomplice Testimony—Charge.**

Where it is apparent that a witness testifying in a case, is an accomplice, the court should instruct the jury to that effect, and should not submit the question of his being an accomplice to be determined by the jury.

2. **Same—Conspiracy to Steal Generally—Theft by a Conspirator.**

Where an agreement is made between two or more parties to steal horses generally, and the theft of a horse is committed by one co-conspirator in the absence of another, such other is not guilty as a principal, simply by virtue of said agreement, where he did nothing, at the time, in aid of the theft..

3. **Theft—Principals.**

A party cannot be convicted on an indictment charging him as a principal in the theft of a horse, where he positively refused to have anything to do with the theft of that particular horse, did nothing to aid or encourage, the party who stole it; was not present nor keeping watch; nor furnishing arms; nor acting through an innocent agent in the commission of said theft.

**4.   Jurors Who Sat on Trial of Previous Case Involving Same Theft—Qualification of.**

Five of the jurors on the panel, on the examination as to their qualifications, stated, that notwithstanding they had tried the case of a codefendant they had formed no opinion as to the guilt of this defendant and could try him impartially; and defendant challenged them for cause, which challenge was overruled, whereupon he challenged three of them peremptorily, thereby exhausting his challenges, and the other two were empaneled and sat upon the trial.   Held:   The jurors were disqualified.   Following, Shannon v. State, 34 Tex. Crim. Rep., 5.

APPEAL from the District Court of Falls.    Tried below before Hon. S. R. SCOTT.

Appeal from a conviction for horse theft; penalty, five years' imprisonment in the penitentiary.

The opinion states the case.

*Rice & Bartlett, J. Gameson* and *T. H. Clampitt*, for appellant.—The court erred in requiring the defendant to pass upon five of the jurors who had on Tuesday, the 4th day of August, sat upon the trial of Virgil Adkins, charged with the theft of the same horse defendant is charged with stealing, and who had rendered a verdict of guilty against the said Virgil Adkins, based upon the same testimony as was offered in this case by the State; and overruling defendant's motion to set aside each of said jurors for cause, because they were disqualified to sit on this case for the reasons stated, and requiring the defendant to peremptorily challenge said jurors.   Every person charged with crime in this State is entitled to a trial by an impartial jury; and no person is a qualfied juror who has sat as a juror on a former trial involving the same questions of fact.   Rev. Civil Stats. (1895), Art. 3141; Jacobs v. State, 9 Tex. Crim. App., 278; Dunn v. State, 7 Tex. Crim. App., 600; Willis v. State, 9 Tex. Crim. App., 297; Code Crim. Proc., Art. 636, Subdiv. 8.

The court erred in its charge to the jury on the subject of accomplice's testimony in this, that it fails to tell the jury in so many words that the witness, Louis Fergurson, was in fact an accomplice, but left the same to be found by the jury.   Where the evidence on the trial conclusively shows that a witness is an accomplice and this fact is not controverted, it becomes the duty of the court to so charge the jury.   Elizando v. State, 31 Tex. Crim. Rep., 237; White v. State, 30 Tex. Crim. App., 653; Zollicoffer v. State, 16 Tex. Crim. App., 313.

The court erred in overruling defendant's motion for a new trial in this case because the verdict of the jury is unsupported by the evidence and absolutely without evidence to sustain the same in this, that there was no evidence outside of that of the accomplice Fergurson going to show or tending to show that the defendant had any connection whatever with the theft of the horse alleged to have been stolen, or that he ever entered into any conspiracy to steal said horse or any other horse.

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HURT, PRESIDING JUDGE.—Conviction for the theft of a horse, the property of Rube Gray. The indictment contains but one count, which charges appellant with the theft of the horse as principal. The only witness that implicated appellant, directly or remotely, with the transaction, was Lewis Fergurson. He was one of the instigators—the original mover and inspirer—of a conspiracy or compact formed, if he tells the truth, by several persons, to steal horses generally in that region of country. The court submitted a charge to the jury authorizing them to determine whether or not Lewis Fergurson was an accomplice; and the only theory upon which this case can be sustained at all is that the jury may have found that Fergurson was not an accomplice. We have examined the proof carefully in that respect, and there is no question but that he was an accomplice; and the court should have instructed the jury to that effect. Take all that was said by this accomplice as true, which tends to implicate the appellant, giving his testimony the strongest possible criminative force, nothing is proved beyond a doubtful agreement between the witness, appellant, and others, to steal horses. If this prosecution had been for conspiracy to commit theft of horses, it could not have been sustained by the testimony in this record, because of the doubtful and uncertain character of the agreement, and the fact that the only witness was an accomplice. It is not pretended that appellant ever encouraged any one else to steal the horse of Gray. Fergurson states that he "met Hill Sessions (appellant) near his livery stable in Rosebud, and he asked me what I was doing there. I told him I was hunting a job. And he then asked me if I did not want to steal something. I told him 'Yes,' if there was any money in it. Someone interrupted the conversation, and I told him I would see him later. About a week after this I went back to Rosebud, and had another conversation with Hill Sessions about stealing stock. We discussed the kind and character of stock that we were to steal, and the character of person from whom to steal, and where to take the same, etc. Appellant asked me what I could do in Lott in the way of stealing the horses. I told him we had some mules and colts, and we also talked of horses belonging to Sand and Capons. We thought it not advisable to take or steal any colts. We talked about a dun horse belonging to Neighbors, and decided not to take him. On the third trip to Rosebud, Virgil Adkins comes in." Fergurson states that "on this trip I saw Virgil Adkins, Maud Adkins, and Oscar Sims. Had a conversation with defendant and Virgil Adkins. The Smiths were not present at the time. I afterwards saw and talked with all these parties, and it was agreed between us that these parties would go and steal as many horses as they could around Rosebud, and bring them to Dickson's gin, near Lott, and I was to get some horses at Lott, also. This

agreement was made on the afternoon of the 16th of April, 1896, and the horses were to be brought to the gin that night." He testified that he went down there every week or ten days, and had made several appointments as to bringing the stock to Lott, all of which they failed to keep, until "I finally told them, if they were not going to bring some to Lott, I would bring some to Rosebud, and asked them if they had any place we could put them, and they answered, 'Yes, in a pasture near Rosebud.'" It was then agreed between the parties that they would bring some horses to Lott, which was done. On the 16th of April Fergurson and two other parties were at Dickson's gin at night, when Virgil Adkins carried the horse of Gray to that place. They had been there about forty-five minutes when Adkins reached the gin with the horse. Being informed by Fergurson that everything was right, he came in, and Fergurson asked him what he had, and where the other boys were. Adkins replied that he had one horse, which was a good one. Fergurson asked why Hill Sessions (defendant) did not come, and he stated that his wife was sick, etc. "During the conversation at the gin I asked him if Hill Sessions helped him to catch the horse, and he replied that Hill would not do anything; that Hill and Jess Smith went off down town together."

Now, concede this to be true; concede that Fergurson was not an accomplice, because he had informed the officers of what he was engaged in; there is nothing in this record beyond an agreement to steal horses generally. The record affirmatively shows that appellant would not engage in the theft of Gray's horse. In the language of Adkins, "Hill [meaning Hill Sessions] would not do anything; that he and Jess Smith went off down town together." Let us suppose that, where an agreement is made between two or more parties to steal horses generally, the parties to such an agreement would be guilty whenever a co-conspirator stole a horse, yet he certainly would not be guilty as a principal because alone of such an agreement. Something else is required. He certainly did not agree to nor encourage Adkins in stealing Gray's horse. Adkins stated that he would not do anything, but went off down town. He was doing nothing in aid of the theft at the time Adkins stole the horse of Gray. He was not keeping watch; he was not furnishing arms or aid; he was not acting through an innocent agent; nor was he present when the horse was stolen. Appellant, on the impanelment of the jury in this case, challenged five of the panel furnished him, on the ground that they had tried a case against Virgil Adkins, charged with theft of the same horse, and had found him guilty. The court overruled his challenge, and compelled him to pass on the jurors. He challenged two of them peremptorily, but three sat upon the jury. The bill of exceptions shows that these jurors stated that, notwithstanding they had tried a case involving the same transaction against a co-defendant of appellant, they had not formed an opinion as to the guilt or innocence of the defendant, and could try him impartially. It is also shown that appellant exhausted his challenges. It has been held by this

court that jurors, under such circumstances, are disqualified. See Obenchain v. State, 35 Tex. Crim. Rep., 490; Shannon v. State, 34 Tex. Crim. Rep., 5. For the errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*