### BUNT PETTY V. THE STATE.

No. 17474. Delivered April 3, 1935.
Rehearing Denied May 22, 1935.

The opinion states the case.

*Robert M. Lyles,* of Del Rio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of receiving and concealing stolen property, and his punishment was assessed at confinement in the State penitentiary for a term of two years.

The indictment in one count charged the appellant with the theft of 50 head of sheep from George Pepper, and in the second count charged him with receiving and concealing said sheep, knowing same to have been stolen. The court submitted both counts to the jury who found the appellant guilty under the second count of receiving and concealing stolen property.

The appellant earnestly insists that the evidence is insufficient to sustain his conviction on the charge of receiving and concealing stolen property for two reasons: First, because the testimony of the alleged accomplices showed that the appellant, if guilty of any offense, is guilty as a principal or an accomplice, and, second, the accomplice witnesses are not corroborated upon any material testimony. In order to determine this question we deem it necessary to state the substance of the testimony, which is as follows: George Pepper testified that he lived 10 miles north from Junction in Kimble County; that on or about the 15th day of August, 1934, he missed quite a number of sheep from his ranch; that his sheep were marked by a crop in the right ear and an underbit in the left ear; that they were also branded with red paint just behind the left shoulder; that he passed through the appellant's pasture and saw some sheep which looked like his sheep and he noticed that the brand had been blotted out and the ears cut off. He notified the sheriff who went with him to the appellant's pasture where the sheep with the blotted brand were examined and found to be Pepper's sheep, at which time appellant informed Mr. Pepper and the sheriff that he had purchased the sheep from Earl Huffman and Bill Foley. Earl Huffman testified that on Sunday about noon he and Foley met appellant in the road near appellant's ranch, at which time appellant told them to go over to George Pepper's ranch and get about 100 sheep; that

he instructed them how to go and that he agreed to pay them $1.50 for the ewes and fifty cents for the lambs and mutton; that appellant then started to town and they, Huffman and Foley, went to get the sheep; that appellant said he would be back by the time that they arrived at his ranch with the sheep. Huffman and Foley gave him fifty cents with which to purchase some lunch for them and bring it when he came out to his ranch; that while on their way to the appellant's ranch with the sheep the appellant met them below his house and helped pen the sheep; that it was then about dark; that the lunch which appellant brought from town consisted of boiled ham, bread, cheese, meat loaf, and sliced tomatoes. After they had eaten their supper appellant said he wanted to mark and brand the sheep. They secured some paint with which the appellant obliterated the brand on the sheep and destroyed the ear marks by cutting the ears off; that when they arrived at appellant's ranch they had 140 head of three-year-old ewes, 20 lambs and two muttons; that among the herd there were three black sheep, two of which they butchered and the third they killed and buried about fifty yards northeast from the pen, and the hides of the other two were buried at a different place north of the pen; that the next day the appellant paid them $50.00 in cash and gave them a check on a Kerrville bank in the sum of $165.00, after deducting $10.00 which Foley owed him. Bill Foley's testimony was in substance the same as Huffman's. The sheriff testified that from information received by him from Huffman he went to the appellant's ranch and searched for the buried sheep and the buried hides; that he found one black sheep buried where Huffman told him they had buried it, and he also found the two hides of the other black sheep north of the appellant's pen. Temple Carpenter testified that about the 13th of August, 1934, the appellant came into his shop about 5 P.M. and purchased some lunch which consisted of some meat, cheese, bread and meat loaf, paying him therefor fifty cents. Mr. Havers testified for the appellant that on Sunday morning about 8 A.M. he went to the appellant's ranch to get some baling wire with which to fix a fence; that he found Earl Huffman and Bill Foley at the barn butchering a white sheep, at which time he noticed three black sheep in the pen, but appellant was not present. Mrs. Betty Andrews testified for the appellant that on Sunday, August 12, at about 1 P.M., when she, in company with the appellant, were returning from appellant's ranch to town, they met Earl Huffman and Bill Foley

in the road, at which time Huffman offered to sell the appellant some sheep; that appellant told Huffman he was overstocked, whereupon Huffman said he would sell them real cheap, to which appellant replied, "They would have to be awful cheap"; that when appellant asked him where the sheep were, he, Huffman, said they were on the road and that he would have them near the appellant's ranch late that evening.

That Huffman and Foley stole 140 ewes, 20 lambs and two muttons from George Pepper and sold them to the appellant seems to be definitely established by the testimony of Huffman and Foley, corroborated by the testimony of other witnesses and the fact that the sheep were found in the appellant's possession with the brand and marks changed, as well as by the check given in payment of said sheep by appellant to Huffman and Foley. The fact that appellant purchased said sheep at one-half their actual market value and then assisted in destroying the ear marks and blotting out Pepper's brand on same, or that he at least saw that the marks on the sheep and the brand had been recently changed, is a sufficient circumstance from which the jury could reasonably conclude that the appellant knew at the time he received and paid for the sheep that they had been stolen. Appellant insists, however, that the testimony shows that if he is guilty of any offense he is guilty of the theft of the sheep or as an accomplice to the theft of the same, and therefore he could not be guilty of the offense of receiving and concealing stolen property. According to the testimony, the appellant did not participate in the actual taking of the sheep. He agreed with Huffman and Foley that if they would steal the sheep and deliver them to his ranch he would purchase the stolen property from them at one-half of their actual market value. He asserted no interest in the sheep nor exercised any control over them until he had purchased them from Huffman and Foley. The subject of when a person may be prosecuted as a principal, accomplice, or a receiver of stolen property is fully discussed in the case of Gammel v. State, 62 S. W. (2d) 139, and we do not deem it necessary to again enter upon an extended discussion of the question. The court at the request of the appellant instructed the jury as follows: "If you believe from the evidence that defendant had any guilty connection with the theft of the sheep described in the indictment, but believe that his guilt is that of an accomplice, as that term is defined, or if you have a reasonable doubt thereof, you will return a verdict of not guilty." Under the foregoing instruction the court advised

the jury that if the appellant was an accomplice, as that term was defined by the court in his charge, or if they had a reasonable doubt thereof, to return a verdict of not guilty. The instruction was proper because the indictment contained no count charging appellant as being an accomplice in the theft. We are not to be understood as holding that if there had been such count in the indictment, it would have been improper to submit such issue. Under the instruction of the court the jury found that appellant was not an accomplice. The testimony does not bring appellant within the definition of a principal because he was not present when the sheep were stolen. See Snider v. State, 44 S. W. (2d) 997.

The appellant urged a number of objections to certain paragraphs of the court's charge and requested several special charges which were given by the court. A careful study of the court's charge as a whole, together with the requested special charges given, leads us to the conclusion that the same was an adequate presentation of the law applicable to the facts and fully protected the appellant in his legal rights.

By bill of exception No. 1 appellant complains of the action of the trial court in permitting the witness Earl Huffman to testify that he showed the sheriff where one of the black sheep was buried and where the hides of the other two sheep were buried, and by bill of exception No. 2 appellant complains of the action of the trial court in permitting the sheriff to testify that he went out to the appellant's ranch to make some investigations; that Earl Huffman pointed out where one of the black sheep was buried and the spot where the hides of the other two were buried, and that he, the sheriff, uncovered the black sheep and also the hides of the other two, to all of which the appellant objected because it was not shown that the appellant was present or had any knowledge thereof, that it merely afforded an opportunity for an accomplice to corroborate himself by his acts and conduct in the absence of appellant, and for the further reason that the appellant at the time was under arrest and in jail. The testimony of each of said witnesses related to facts within the knowledge of each and was admissible under the holding of this court in the following cases: Marta v. State, 81 Texas Crim. Rep., 135, 193 S. W., 323; Huey v. State, 81 Texas Crim. Rep., 554, 197 S. W., 202; Willman v. State, 92 Texas Crim. Rep., 77, 242 S. W., 746; Howard v. State, 13 S. W. (2d) 80.

By bill of exception No. 3 the appellant complains of the action of the trial court in permitting the district attorney in

his closing argument to employ the following language: "No one denied that an agreement was entered into," whereupon the appellant then and there in open court objected because it was a reference to the failure of the appellant to testify. The court, however, qualified said bill in which he certifies that the district attorney did not use the language as set out in appellant's bill of exception but used the following language in his closing argument: "There is no conflict about there having been an agreement entered into out there in that lane that Sunday morning, August 12, 1934. No one has denied that an agreement was entered into. Earl Huffman, Bill Foley, and Betty Andrews testified an agreement was entered into. About this there is no difference. The only conflict is on the terms of the agreement." The bill as thus qualified fails to reflect any error. See Rundell v. State, 90 Texas Crim. Rep., 410.

No reversible error appearing in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It is insisted by counsel for appellant that if the evidence is sufficient to convict appellant of any offense it shows him to be guilty as a principal in the theft of the sheep and therefore he could not be guilty as a receiver of them. It is urged that our original opinion is in conflict with Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W., 1046, and McInnis v. State, 122 Texas Crim. Rep., 128, 54 S. W. (2d) 96. Appellant's proposition is based upon the theory that there was a conspiracy to steal the sheep which had been entered into by appellant, Huffman and Foley, and that the sheep were stolen during the existence of the conspiracy and in futherance of the common design of all, and therefore, if appellant is guilty it is as a principal. In determining the question it must be borne in mind that the mere fact that a conspiracy to steal is shown does not make all parties to the conspiracy principals in the theft. Branch's Ann. Tex. P. C., Sec. 700, p. 359; Burow v. State, 85 Texas Crim. Rep., 133; 210 S. W., 805; Mitchell v. State, 44 Texas Crim. Rep., 228, 70 S. W., 208; Sessions v. State, 37 Texas Crim. Rep., 61, 38 S. W., 605;

Bell v. State, 39 Texas Crim. Rep., 677, 47 S. W., 1010; O'Quinn v. State, 55 Texas Crim. Rep., 18, 115 S. W., 39. Conceding that appellant told Huffman and Foley to go steal the sheep from Pepper, gave them directions as to what route to follow in bringing them to appellant's pasture, and received them after they reached there, still he would not be a principal in the theft unless present when they were taken, or was doing something at the time of the theft in furtherane of the common design. There is no pretense that appellant was present when Huffman and Foley took the sheep from Pepper's pasture, and no evidence is discovered indicating that he was at the time doing anything in furtherance of the taking.

Reverting to the Middleton case (supra) relied on by appellant, we note that Middleton was being prosecuted as a principal for the murder of Mary Lewis. Osment did the actual killing, but testified that Middleton had taken the eleven-year-old girl of deceased away from the scene of the killing to *keep her from being a witness thereto,* and to avoid having to kill her also. In the course of the opinion it is said: "There is no doubt in our minds on the proposition that one who purposely removes a possible or probable witness for the purpose of preventing the witnessing by such person of the proposed crime, and who is keeping such person away, is within the definition of a principal, as contained in article 76 of our Penal Code, * * * " After stating the facts it is further said in the opinion: " * * * These facts clearly show a conspiracy between Osment and appellant, and for so long as same continued, and until its consummation, the acts of each in furtherance of the common design were the acts of all, and each would be a principal in any crime committed in the execution of such design. We think the trial court did not err in submitting the law of principals to the jury."

It is upon the language last quoted that appellant relies in the present case. The language should be construced in relation to what Middleton was doing at the time of the murder. It is sometimes difficult under the facts to determine who are principals in the offense of theft. The rules which control in distinguishing a principal in such case from an accomplice in the theft, or from a receiver of the stolen property were pretty definitely settled in the case of Smith v. State, 21 Tex. App., 107. The question was reviewed in Burow v. State, 85 Texas Crim. Rep., 133, 210 S. W., 805, in which the facts were as follows: Burow had agreed with certain Mexicans that they should steal cattle and bring them to Burow's pen; that Burow

would pay them a stipulated sum for the cattle. At the time the cattle were taken Burow was not present, and was doing nothing in furtherance of the design. It was not contemplated that the Mexicans should have any interest in the cattle after they delivered them to Burow, and received their pay. Burow was convicted of theft of the cattle. Judge Morrow, writing on motion for rehearing, said: "The rule laid down in the leading case mentioned (referring to Smith v. State, supra) is that, where persons enter into a conspiracy to commit the crime of theft of property contemplating that one or more of the conspirators shall take the property from the possession of the owner and deliver it to another conspirator not present at the time of the taking, to be by him converted, and the proceeds distributed among all, and that when this conspiracy is carried into effect by the taking of the property from the possession of the owner by one or more of the conspirators delivering it pursuant to agreement to another to be converted by him, pursuant to the previous agreement, to the end that the proceeds may be distributed, all are principals within the meaning of the statute."

It was held that the facts in Burow's case did not bring it within the scope of the Smith case, and a reversal was ordered because Burow was not shown to be the principal. The facts are so similar to those in the instant case that the application of the same rule is obviously called for. Huffman and Foley had no interest in the sheep after appellant paid them so much per head for delivering them to him; there was to be no sale of them by appellant with a division of the proceeds among the three. Appellant could do with the sheep as he pleased.

The Burow case was followed in Kolb v. State, 88 Texas Crim. Rep., 593, 228 S. W., 210. (See opinion on rehearing.) We think McInnis v. State, 122 Texas Crim. Rep., 128, 54 S. W. (2d) 96, upon which appellant relies in his motion for rehearing is against him instead of supporting him. There the conviction was for receiving stolen property, but the facts showed McInnis to be a principal in the theft under the holding in Smith's case (supra) and others mentioned, because after the property there involved was stolen it was turned over to McInnis who was to dispose of it, and Haskett (the actual taker) was to receive a percentage of the proceeds.

The other point urged by appellant in his motion is that the argument of the district attorney complained of in bill of exception No. 3 was a reference to the failure of appellant to testify. It was held in Boone v. State, 90 Texas Crim. Rep.,

374, 235 S. W., 580, that the statute forbidding allusion to the failure of accused to testify (Art. 710, C. C. P., 1925) was not infringed when the language used in argument might be construed as an implied or indirect allusion to such failure, but that to come within the prohibition of the statute the implication must be a necessary one. The rule has been frequently followed. In Kennington v. State, 49 S. W. (2d) 776, the cases are cited. Huffman and Foley testified that on a certain. occasion an agreement was had with appellant. Betty Andrews, appellant's own witness, testified to such agreement, but varying in terms from that claimed by Huffman and Foley. Having regard to the record, we think the argument complained of cannot be said to be a "necessary" allusion to the fact that apellant did not testify as a witness.

Believing our original opinion made proper disposition of the case, the motion for rehearing is overruled.

*Overruled.*

MORROW, P. J., absent.