## ERNIE HARDIE V. THE STATE.

No. 20776.   Delivered February 7, 1940.
Rehearing Denied November 20, 1940.
Application for Leave to File Second Motion for Rehearing
Denied December 4, 1940.

The opinion states the case.

*Tom R. Mears,* of Gatesville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the offense of kidnapping C. L. Kirby for the purpose of removing him out of the State, and the jury assessed a penalty of five years in the penitentiary, hence this appeal.

The facts show that appellant was an inmate of the State Training School at Gatesville, Texas. That a companion inmate named "Bulldog" Reynolds had possessed himself of a pistol, and at nighttime, by means of a ruse, Mr. Kirby, who was an attendant in the dormitory where the boys were sleeping, was caused to open the door to the dormitory, whereupon the boy Reynolds presented this pistol, and by means thereof he caused the attendant to open the door, and then to go down the hall where appellant was sleeping. Reynolds awakened appellant and said "Let's get going." The two boys then took Kirby out

in a field, meanwhile threatening him with the pistol, and eventually they made connections with some four other boys on the road who were in an automobile, and then began a flight all over the State. The car contained other firearms, which were used threateningly towards Kirby in many instances. When requested by Kirby to release him the boys told him that they were taking him with them as protection against any officers shooting at them; that they intended to keep him until they got to the State of Louisiana or Arkansas. After having gone into Waco, Corsicana and probably Tyler, they came near to Malakoff, and they there decided to tie Kirby up with wire, gag him and knock him insensible and proceed on their journey out of the State. Kirby finally talked them out of beating him, but they did tie him up with wire, and left him gagged. They were afterwards captured near Marshall in Harrison County, near the Louisiana border.

Appellant's first complaint is found in his bill of exceptions No. 1, which is based on an endeavor upon the part of his mother to get the county attorney to agree to prosecute this appellant as a delinquent child in the juvenile court. It is deducible from the testimony that appellant was already an inmate of the State Training School as a delinquent child; that this offense was committed by him, if at all, on April 28, 1939; that his mother appeared before the county attorney of Coryell County on May 6, 1939, and merely made the request that appellant be proceeded against as a delinquent child, stating in such conversation that appellant would not be seventeen years old until May 9, 1939, or three days thereafter. The county attorney told her that he intended to present this matter to the grand jury which met on July 10, 1939. It is appellant's contention that it was obligatory upon the attorney's part to immediately proceed against appellant as a juvenile.

The county attorney could not, under the statute, make an admission as to the age of the appellant. See Art. 1086, C. C. P., but proof of the same should be made to the satisfaction of the court. The mother presented him with no affidavit setting forth such age, nor other proof than her mere statement that her son lacked three days of being seventeen years of age, but contended herself merely with such oral statement. Unquestionably the charged offense was a serious one, a felony, and the testimony evidenced shrewd preparation and the contemplation of other and more serious crimes upon the part of appellant and his companions.

The law contemplates as controlling in such matters the age of the accused at the time of the trial, not his age at the time of the offense, and we do not think that the county attorney's refusal to rush into an immediate trial within less than three days evidences an unfair attitude upon his part. In the case of McLaren v. State, 85 Texas Crim. Rep. 31, 209 S. W. Rep. 669, the appellant had been first tried for the murder of his father while he was only sixteen years of age which first case was reversed by this court on that ground, the court holding that he should have been proceeded against as a juvenile. See McLaren v. State, 82 Texas Crim. Rep. 449. Upon the reversal of this case the accused had reached the age of seventeen years, and he was again put upon his trial for murder under the authority of Arrendell v. State, 60 Texas Crim. Rep. 350, 131 S. W. Rep. 1096, and although the offense was charged to have been committed on a date which showed the accused was under the age of seventeen years, nevertheless it was held that the age of the accused at the time of the trial and not at the time of the commission of the offense was that which governed in regard to his juvenility. McLaren v. State, 85 Texas Crim. Rep. 31, 209 S. W. Rep. 669; also see Watson v. State, 90 Texas Crim. Rep. 576, 237 S. W. Rep. 298; Walker v. State, 119 Texas Crim. Rep. 330, 45 S. W. (2d) 987; Stallings v. State, 87 S. W. (2d) 255. We have no doubt of the correctness of this doctrine, and this bill is overruled.

Bill of exceptions No. 2 is practically to the same effect as Bill No. 1, and is also overruled.

Bill of exceptions No. 3 relates to the refusal of a peremptory instruction, and is overruled.

Appellant complains because of the court's failure to charge on the law of circumstantial evidence. It seems to us that such a charge was not demanded herein. The testimony as to the forced taking of Kirby, of course, was direct; the portion of the offense charged and necessary to be proven was that relative to taking Kirby out of the State. The proof thereof could only lie in the minds of appellant and his companions, and in this instance is not dependent upon circumstances, but comes from them direct. They told Kirby, when asked by him to be released:

" 'No, we will put you out about this time tomorrow night in Louisiana or Arkansas, and we are going to hold you until we get you out of the State. * * *' Reynolds said 'as long as we have got you in here we have protection from the law. When they find out that you are with us they are never going to shoot

in on us while you are with us.' * * * I asked them there (at Waco) to let me go, and they said 'No,' they were going to take me along until they got out of the State. * * * They said they were going into Louisiana or Arkansas."

"They told me that they were carrying me for protection. And trying to make their escape from the Juvenile Training School. That is what they said. That is what Bulldog told me and Ernie too. Ernie had said nothing to me until they took him out of the cell. They told me that they were going to carry me either to Louisiana or Arkansas when I was trying to get them to let me go. They said either to Louisiana or into Arkansas. They talked about them both.

"I don't know whether it was the particular highway that leads to Louisiana, but they could follow this highway to that State. I am not familiar with the highways. I would have to look at the map. They released me at Malakoff. They had a map that night. There is one highway turns north and goes to Arkansas and one goes ahead to Louisiana. We could go either way."

After traveling all day, at times appellant guarding Kirby with a shotgun, and at times others guarding him,—they eventually got their car stuck in a hollow, and at such place seemed to have decided to bind Kirby and tie him to a tree with wire, gag him and beat him into insensibility and leave him there unconscious, and proceed on their contemplated journey. These boys were later arrested on April 28, 1939, on Highway 80, which is called Texas and Louisiana Highway, which goes to Shreveport, Louisiana, near the town of Marshall, in Harrison County. They still had a pistol, a shotgun and a rifle with them.

We think there is direct testimony to show that these boys intended to take Mr. Kirby out of the State, and that they were afraid to leave him because of the fear of his giving the alarm and their resultant capture. Why they changed their minds we do not know, but we have their own statements of what they intended to do, and it was not necessary to resort to circumstances to thus show. We overrule this contention.

Appellant's next contention seems to be that he, if guilty of any criminal act, could only be guilty as an accessory after the fact, basing his argument on the fact that "Bulldog" Reynolds took the man Kirby in his custody and liberated appellant, and this offense of kidnapping was at such time initiated by Reynolds alone. The court charged on the law of principals, and the testimony showed that appellant immediately upon being

liberated entered into the conspiracy which evidenced itself herein by the careful preparation made beforehand; that appellant possessed himself of a shotgun, and made Kirby lie down and hide; again he made him march down the road, and stood guard over him, and "restrained Kirby from moving from one place to another" as charged in the indictment. Mr. Branch says in his Penal Code, p. 352, Sec. 693: "It makes no difference at what time one enters into a conspiracy to commit a crime; every one who enters into the common purpose and design is generally deemed a party to the act which has been done before by the others and to every other which may be done by any of the others before the termination of the conspiracy in furtherance of the common design," citing many cases.

Appellant complains because he says the court should have charged the jury that if it was the purpose of the kidnapping to enlarge the two boys from their confinement in the State Training School, that such a defense should have been submitted to the jury in the court's charge on the converse of the law of principals. Such a purpose may have been primarily the one that actuated these boys, but accompanying such purpose and in order to effectuate it, from their testimony, we gather, there seemed to have arisen the necessity of taking Kirby out of the State in order that he might not inform upon them until they had accomplished their purpose of fleeing from the State. We do not think such a defense had presented itself in these facts.

There are other contentions advanced by appellant in his brief relative to the court's charge, and based upon the premise that appellant was asleep when the witness Kirby was first captured by "Bulldog" Reynolds, and therefore that he could not be guilty of the offense of kidnapping. As observed above, however, we think an answer to such contention is that if a person enters into a conspiracy after its formation, and participates in the carrying out of the common design, that he adopts all previous acts of his coconspirators. See Branch's Penal Code, supra.

We have considered all of appellant's contentions set forth in his brief and the record, and find no error reflected therein.

The judgment is affirmed.

## MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Two propositions are presented in the motion for rehear-

ing, one of which has given the members of this court no little concern. It is presented that under the facts of the case appellant could not be a principal in the kidnapping of Kirby, but, at most, would be an accomplice.

We must all agree after an exhaustive review of the holdings of this court on the law of principals that if appellant came into the case after all things had been done to complete the crime and simply to aid the confederates in escaping, or in hiding the evidence of the things they had already done, or to participate in their accomplishments, he would not be a principal. On the other hand, if he enters into a relationship with another party while the crime is being committed, and, (1) knowing the unlawful intent, aids by his acts or encourages by his words the commission of the offense, or (2) keeps watch so as to prevent any interference with the commission of the crime, or (3) actually engages in procuring aid, arms or means of any kind to assist in the unlawful act, or (4) during such time endeavors to secure the safety of the other party or of the other party and himself, or (5) procures an innocent party to commit the offense, or (6) in any manner agrees to the commission of the offense and is present, whether he renders any aid or not, he becomes a principal. Failing to do one of these things it would be difficult to conclude that he would be a principal.

It is not essential, however, to a proper discussion of this case that we go further than the facts before us, and a speculative case embracing other conditions than those under consideration may be confusing rather than helpful. Whatever the facts and circumstances, we must keep clearly before us the underlying principle, "that in every case, no matter what phase of the law is involved, the evidence must show, and the charge of the trial court submit, that at the time of the commission of the offense the parties must be acting together, each doing some part in the execution of the common purpose." Middleton v. State, 217 S. W. 1046. See also Smith v. State, 17 S. W. 558.

The authorities cited in the original opinion are here adhered to without repetition, and the reasoning indulged based on them is re-affirmed.

From the many authorities examined it is noted that the question will frequently turn on the wording of the statute of the particular state, so that consideration must be given to the language of our own.

Art. 1169, P. C. (1925) provides that "False imprisonment is the wilful *detention* of another against his consent * * * which *restrains* the party so *detained* from removing from one place to another as he may see proper."

Art. 1177, P. C. (1925), defining kidnapping, reads in part, "When any person is falsely imprisoned for the purpose of being removed from the state * * * such false imprisonment is 'kidnapping.'" This is the section defining kidnapping under which appellant is being prosecuted.

For a better understanding, let us copy into the definition of kidnapping the definition of false imprisonment, which would read as follows, "When any person. is *wilfully detained by another against his consent * * * which restrains the party so detained from removing from one place to another as he may see proper,* for the purpose of being removed from the state, such *detention* is kidnapping."

The earnest and learned argument in behalf of appellant presented to us seems to be based upon the theory that the *seizure* of Kirby by Reynolds completed the offense and that the awakening of appellant and his entry into the activities which immediately followed constituted him an accessory after the fact. If the definition was fully satisfied under the facts of this case at the moment the seizure of Kirby took place so that all things that follow are no part of the kidnapping, then the appellant's theory would be correct. There is quite a distinguishment to be made between the word *detention* as used in Art. 1169, and embraced in Art. 1177 defining "kidnapping" and the word *"seizure."* "Detention" is defined as "the keeping back"; "confinement"; "restraint"; while "seizure" is to "take possession of forcibly"; "to grasp"; "to snatch"; "to put in possession." It occurs to us that while *seizure* means to "put in possession," *detention* may well be said to mean to "keep in possession for some period of time."

Using the language of the definition of false imprisonment as applied to the facts of this case, may we ask these questions:

1. Did appellant aid by acts or encourage by words Reynolds in the unlawful detention of Kirby?

2. Did he keep watch to prevent the interruption of Reynolds in the detention of Kirby?

3. Did he engage in procuring aid or arms or means to assist Reynolds in the detention of Kirby while the latter perpetrated the unlawful detention?

4. Was appellant doing anything to secure the safety or concealment of Reynolds while detaining Kirby?

5. Was Reynolds appellant's innocent agent in detaining Kirby?

6. Assuming that appellant had agreed to and had advised the commission of the offense by Reynolds, can it be said under the circumstances here existing that appellant was present when Reynolds detained Kirby so as to bring appellant under the sixth designation of principals as set out in the Middleton case, supra?

An affirmative answer to one or more of the foregoing questions may constitute him a principal.

A brief analysis of the facts as testified to by Kirby and properly submitted to the jury will be sufficient. Appellant was sleeping when Reynolds drew a pistol and took charge of Kirby. He was in a separate cage, but whether in a separate room we are unable to tell from the record. The first thing done after appellant joined Reynolds was to go to another cage and turn out another boy. "Then they demanded me to go down the steps ahead of them. Reynolds did most of the talking all the time." * * * (S. F. p. 2) "And they told me I was just delaying the time * * *. There was lots of this talking that I don't know whether they were all talking at times, and I could not say which one every time. * * * They were both talking there part of the time (the boys). The gun was being held on me all of this time. Reynolds did part of the talking and this boy did some." (S. F. p 6.) "This defendant would go on a few feet ahead and he would say, 'Make him run; make him run.' We got down the road about a quarter of a mile and the car was there that they expected. Reynolds sent this boy and Mangum down the road to see if the car was there, and told them to go up the road and meet us. They went down about half a mile and came back and reported the car was not there. We got down to the end of this road; me and these three boys stopped and they was discussing what to do and this boy Hardie rushed up and says, 'we must go; can't stay here.' And I kept saying, 'let me go,' and they said no they would not let me go, and Hardie said, 'we'll just have to go down and get the car,' and said 'we couldn't get away from the dogs, all of us, without a car,'" (S. F. p. 7.) Again the witness testified, "He started defendant down the road to stop the car. When he got them stopped, I guess it was 200 yards from the road, he came running back and he

said, 'hurry—make him run,' and he was threatening every few minutes and I would just keep walking." (S. F. p. 7.)

The foregoing is sufficient quotation from the testimony to reveal the connection of appellant with the detention of Kirby even before they left the building. It was continuous throughout the hours, as stated in the original opinion. Had Reynolds been interrupted at any time or place, it appears he would have been guilty of the offense of kidnapping, yet, under the facts of this case, the detention was a continuous thing until the victim was abandoned and loosed himself from his bonds in a canyon near Malakoff. If the meaning of false imprisonment as used in the article of the statute defining kidnapping means only the immediate seizure of the victim, then the legislature has used the word "detention" in a sense other than its ordinary and accepted meaning. We find nothing in the statute to so indicate. If given that ordinary and accepted meaning, *detention* includes and embraces all of the period of time in which the parties involved held the victim in their custody, and all of their acts· may, and do under the facts of this case, constitute and are included in the offense of kidnapping. That being true, it is perfectly apparent that appellant was a principal offender and the charge was properly laid against him.

The quoting of the evidence in this case by Kirby aids in disposing of the other question raised in the motion for rehearing. Kirby's testimony was direct on the subject and sufficient upon which a jury may find him guilty. Any circumstances which may be considered in the case is secondary and, in fact, minor so that it may not be relied upon and probably was not. That being true, a charge on circumstantial evidence would have been improper.

The motion for rehearing is overruled.

HAWKINS, Presiding Judge (dissenting on Rehearing).

Appellant has presented a motion for rehearing in which he urges two propositions, both of which have given us much concern. The first is that the evidence demonstrates that appellant was not a "principal" in the kidnapping of Mr. Kirby; second, that the case is one dependent on circumstantial evidence and a charge upon such issue should have been given.

It is well to get clearly in our minds when a party is a "prin-

cipal" in the commission of an offense. In Middleton v. State, 86 Tex. Cr. R. 307, 217 S. W. 1046, it was pointed out that some confusion had arisen regarding the question and it was undertaken in the case mentioned to clarify the law upon the subject. We quote from the opinion as follows: "* * * Article 74 of our Penal Code says that all persons who are guilty of acting together in the commission of an offense are principal offenders. Following this comprehensive general statement of the underlying principle, which is acting together in the commission of the offense, come articles 76 to 78, each pointing out specific ways in which the parties may be said to act together. The six specific definitions in these articles held that in the following cases the parties are principals:

"(1) When A. actually commits the offense but B. is present, knowing the unlawful intent, and aids by acts or encourages by words.

"(2) When A. actually commits the offense but B. keeps watch, so as to prevent the interruption of A.

"(3) When A. is actually executing the unlawful act, and B. engages in procuring aid, arms, or means of any kind to assist while A. executes said unlawful act.

"(4) When A. actually commits the offense but B. at the time of such commission is endeavoring to secure the safety or concealment of A. or of A. and B.

"(5) When A. employs an innocent agent, or by indirect means causes the injury, or brings about the commission of the offense.

"(6) When A. advises or agrees to the commission of the offense, and is present when the same is committed, whether he aid or not.

"Of these six statutory ways in which parties may act together and be principal offenders, it will be seen that two only require the presence of the coprincipal with the one actually doing the criminal act, while four make him a principal though physically absent from the scene of the crime; but no confusion will arise if we keep clearly before us the underlying principle that in every case, no matter what phase of the law is involved, the evidence must show, and the charge of the trial court submit, that at the time of the commission of the offense the parties must be acting together, each doing some part in the execution of the common purpose."

In addition to the *four* instances pointed out in the opinion in Middleton's case where a party may be a principal though physically absent from the scene of the crime a *fifth* may be mentioned. In Smith v. State, 21 Tex. Cr. App. 107, 17 S. W. 558 it appeared that a conspiracy had been entered into between M. M. Smith and a number of other people involving the theft of cattle in Erath County. By the terms of the conspiracy the cattle were to be stolen by the other conspirators but were to be delivered to M. M. Smith in Parker County, *and it was then M. M. Smith's part of the conspiracy to sell the cattle and divide the proceeds among himself and the other conspirators.* It was held that under these circumstances M. M. Smith was a principal in the theft of the cattle although he was not present at the place of the theft and was doing nothing at the time the theft was committed in furtherance of the common design. The holding in the Smith case adds still another—the fifth—instance where one may be a principal although not personally present at the time the offense is committed. The Smith case has been followed and the principle there announced approved many times by this court, some of the cases being as follows: Kolb v. State, 88 Tex. Cr. R. 593, 228 S. W. 210; Smith v. State, 21 Tex. Cr. App. 133, 17 S. W. 558; Byrd v. State, 117 Tex. Cr. R. 489, 38 S. W. (2d) 332; Burow v. State, 85 Tex. Cr. R. 133, 210 S. W. 805; McInnis v. State, 122 Tex. Cr. R. 128, 54 S. W. (2d) 96; Coy v. State, 131 Tex. Cr. R. 489, 100 S. W. (2d) 1016; Miller v. State, 133 Tex. Cr. R. 53, 105 S. W. (2d) 1097; Thornton v. State, 136 Tex. Cr. R. 560, 127 S. W. (2d) 197.

It must be borne in mind that because a person has been a party to a conspiracy to commit a crime it does not necessarily follow that such person is a principal in the commission of the crime which is contemplated by the conspiracy.

In our original opinion we quoted Sec. 693, p. 352, Branch's Ann. Tex. P. C. as follows: "It makes no difference at what time one enters into a conspiracy to commit a crime; every one who enters into the common purpose and design is generally deemed a party to the act which has been done before by the others and to every other which may be done by any of the others before the termination of the conspiracy in furtherance of the common design." When this statement is understood as the announcement of a rule of evidence it is absolutely correct. At whatever time one enters into a conspiracy, the acts or words done or said by any of the other conspirators in furtherance of the common design is provable against each of them, and in that sense each is deemed a party to the acts done or words

spoken by the others, but it is not to be understood that in the commission of the crime which is contemplated by the conspiracy that all conspirators would be principals. They become such only when brought into that relation by the evidence under the statute and rules regarding principals heretofore referred to. See Cook v. State, 14 Tex. Cr. App. 96.

In Bean v. State, 17 Tex. Cr. App. 60, accused was charged as a principal with the murder of Charles Stevens. The question arose as to whether accused was guilty as a principal or an accomplice, and it is stated in the last paragraph of the opinion that according to accused's own confession he was guilty both as an accomplice and as an accessory, and that under the indictment as it was framed he could not legally be convicted of either of these offenses. Drawing the distinction between a principal and an accomplice, Judge Wilson quoted from Cook v. State, 14 Tex. Cr. App. 96, and he then makes the following very pertinent observation with reference to the distinguishing features of the two offenders. "We must confess that, to our minds, the distinction between these two characters of offenders is often shadowy and indistinct. It is as clearly drawn in Cook's case as it is possible perhaps to draw it. The dividing line between the two is the commencement of the principal offense. If the parties *acted together* in the *commission* of the offense, they are principals. If they *agreed* to commit the offense together, but did not *act together* in its commission, the one who *actually* committed it is the principal, while the other, who was not present at the commission, and who was not in any way aiding in its commission as by keeping watch, or by securing the safety or concealment of the principal, would be an accomplice. To constitute a *principal*, the offender must either be present where the crime is committed, or he must do some act during the time when the offense is being committed which connects him with the act of commission in some of the ways named in the statute. Where the acts committed occur prior to the commission of the principal offense, or *subsequent* thereto, and are independent of, and disconnected with, the *actual commission* of the principal offense, and no act is done by the party during the commission of the principal offense in aid thereof, such party is not a principal offender, but is an accomplice or an accessory according to the facts." See also O'Neal v. State, 14 Tex. Cr. App. 582; O'Quinn v. State, 55 Tex. Cr. R. 18.

In Petty v. State, 128 Tex. Cr. R. 562, 82 S. W. (2d) 965, accused had been convicted of the offense of receiving and concealing stolen property, but contended strenuously that if guilty

at all he was guilty as a principal, basing it on the proposition that if there was a conspiracy entered into by accused and two other parties to commit the theft of sheep, and that the sheep were stolen during the existence of the conspiracy, and in furtherance of the criminal design of all, that appellant, if guilty at all, was guilty as a principal. It was not contemplated that Petty would sell the sheep and divide the proceeds with the other conspirators. Petty was to pay a specified price for the sheep when delivered to him, and the other conspirators had no further interest in them nor the proceeds. This Court said in the opinion on motion for rehearing: "In determining the question it must be borne in mind that *the mere* fact that a conspiracy to steal is shown does not make all parties to the conspiracy principals in the theft. Branch's Ann. Tex. P. C. Sec. 700, p. 359, Burow v. State, 85 Tex. Cr. R. 133, 210 S. W. 805; Mitchell v. State, 44 Tex. Cr. R. 228, 70 S. W. 208; Sessions v. State, 37 Tex. Cr. R. 58, 61, 38 S. W. 605; Bell v. State, 39 Tex. Cr. R. 677, 47 S. W. 1010; O'Quinn v. State, 55 Tex. Cr. R. 18, 115 S. W. 39." See also Gammel v. State, 124 Tex. Cr. R. 328, 62 S. W. (2d) 139.

Unless appellant was so connected with the commission of the crime of kidnapping Kirby as to characterize him a principal therein, the fact that appellant profited by it to escape from the training school and did some subsequent act in furtherance thereof would not make him a principal. In Walker v. State, 29 Tex. Cr. App. 621, 16 S. W. 548, it appears that Shearra shot Mallory. Walker struck Mallory after he had been shot. The State there contended that under the circumstances Walker's act was a ratification and endorsement of what Shearra had previously done, and that thereby Walker became a principal in the killing of Mallory. This court said: "We do not know of any such rule of criminal law. The doctrine of indorsement or ratification of an act already committed by another, so as to make the indorser and ratifier equally guilty with the main actor or party indorsed, is a principle and rule of conduct which we have not found laid down by any of the standard elementary authors of criminal law, and we know of no such rule having been announced in any of the decisions of the courts of last resort in this country, nor have we been cited to any authority bearing out that proposition by the learned and distinguished counsel for the State."

Art. 1169 P. C. (1925) provides that: "False imprisonment is the wilful detention of another against his consent * * * which restrains the party so detained from removing from one place to another as he may see proper."

Art. 1177 P. C. (1925) reads in part: "When any person is falsely imprisoned for the purpose of being removed from the State * * *such false imprisonment is 'kidnapping.'"

The evidence is undisputed that by a subterfuge Reynolds induced Kirby to unlock the door of his (Reynold's) cell or quarters, whereupon he presented a pistol at Kirby and thereby forced him to accompany Reynolds to the cell or room occupied by appellant, forced Kirby to unlock the door to appellant's quarters, where they found appellant in bed and asleep. Reynolds awakened appellant and said to him "Let's get going." Appellant, barefooted, left the building with Reynolds and Kirby, the latter still intimidated by the pistol in Reynold's possession. Under our statute the crime of "kidnapping" was complete when Reynolds willfully detained Kirby if the detention was for the purpose of removing Kirby from the State. It was not necessary that the removal be consummated. It was sufficient that the purpose to remove existed at the time the unlawful seizure or detention occurred. See People v. Harrison, 261 Ill. 517, 104 N. E. 259.

Reverting now to the principles announced in Middleton v. State, 86 Tex. Cr. R. 307, 217 S. W. 1046, and applying them to the undisputed facts,—what connection did appellant have with Reynolds' act which would fix the status of a principal upon appellant? (1) He certainly did not aid by acts nor encourage by words Reynolds in the unlawful seizure of Kirby. (2) He was not keeping watch to prevent the interruption of Reynolds. (3) He was not engaged in procuring aid, arms or means to assist Reynolds while the latter perpetrated the unlawful detention and seizure of Kirby. (4) Appellant was not doing anything to secure the safety or concealment of Reynolds. Appellant slept while Reynolds acted. (5) Reynolds was not appellant's innocent agent. (6) Assuming that appellant had agreed to and advised the commission of the offense, by Reynolds, can it be said under the circumstances here existing that appellant was *"present"* when Reynolds took Kirby in charge so as to bring appellant under the sixth designation of a principal? He was in a different room or cell from Reynolds, not shown to be in sight of the place where Kirby was seized, and therefore, not in a position to have given signals to Reynolds even had appellant been awake. Likewise, if awake, he was in no position to have gone to Reynolds' aid, if such aid had been necessary. We quote from 16 Corpus Juris, page 126, Sec. 114, as follows: "CONSTRUCTIVE PRESENCE. The presence at the place and time of the crime required to make one a principal in the

second degree, or an aider and abettor, may be constructive, as where one, acting with another in the pursuance of a criminal design, is so situated when the crime is committed as to be able to assist in its commission. As a general rule, one is to be deemed constructively present if he is at the time performing any act in furtherance of the felony or is in a position to give information to the principal which would be helpful to the end in view, or would prevent others from doing any act by way of warning which would put an obstacle in the way of the consummation of the crime or render its consummation more difficult; and it is immaterial at what distance he may be from the scene of the felony. And a fortiori he is to be deemed constructively present if he is near enough to render assistance if need be and to encourage the actual perpetration of the felony." See also 22 C. J. S., Criminal Law, sec. 86.

This principle was recognized in Pruitt v. State, 91 Tex. Cr. R. 189, 237 S. W. 572. The question there was whether accused was a principal in a robbery. This court said: "He was present in the sense that he could see what was going on, and was near enough to have interposed in behalf of Alford to aid him in carrying out his unlawful purpose if an interruption of any kind had arisen."

In principle the same, is Rowan v. State, 97 Tex. Cr. R. 130, 260 S. W. 591. To hold appellant responsible for Reynolds' act because he took advantage thereof to escape from the Training School and flee with the others would be opposed to the holding in Walker v. State, 29 Tex. Cr. R. 621, 16 S. W. 548, against the doctrine of ratification of a criminal act so as to become a principal therein.

After mature deliberation we have reached the conclusion that under the undisputed facts appellant cannot in law be held to have been "present" when the offense was committed by Reynolds, and therefore was not a "principal" in such offense. In reaching this conclusion the case of Coomer v. State, 97 Tex. Cr. R. 588, 262 S. W. 495, has not been overlooked. Coomer and two other parties were engaged in the unlawful manufacture of whisky. They had agreed not to submit to arrest. All of them were armed. Accused had temporarily laid his gun aside and gone a few steps from his companions. At this time officers appeared and arrested accused. He immediately gave a signal to his confederates who fired upon and killed one of the officers. Accused urged that he could not have been a principal in the killing because he was under arrest at the

time it occurred. The contention was overruled on the ground that he was physically present, and although he had been placed under arrest he aided the other confederates by giving the signal upon which they acted, from which acts the death of the officer resulted. Upon the facts Coomer's case is readily distinguishable from the one presently considered.

The other proposition urged upon motion for rehearing is that the trial court should have charged upon circumstantial evidence. The trial court's attention was called to the omission of an instruction on circumstantial evidence by proper exception to the charge

All of the State's criminative evidence comes from Mr. Kirby, and we find only one statement from him upon which a contention could be based that the evidence of appellant's connection with the main crime was direct. The statement referred to follows: "While we were out they discussed that they had made the arrangements that evening about what they were going to do, him and Bulldog (Reynolds) and Errie (appellant) when talking to those Houston boys said he told them that he told Bulldog to be sure and let him out when he got out." It will be noted that the foregoing is not an unequivocal admission of appellant that he had agreed to kidnap Kirby for the purpose of taking him out of the State. In order to take the case out of the rule of circumstantial evidence the admission must be unequivocal as to the commission of the crime. If it is only by inference from the admission that it can be determined that accused committed the crime the court should charge on circumstantial evidence. See Branch's Ann. Tex. P. C., Sec. 2478, p. 1341 and cases there cited. The other facts clearly show, we think, that appellant was not a party to any understanding with the boys (called the Houston boys) who furnished the "get away car" that appellant would be with Reynolds. When Reynolds caused Kirby to unlock the door to appellant's quarters he was asleep and left without putting on his shoes. The car was not immediately contacted, and appellant apparently was unaware that one was expected because he kept insisting that they could not escape on foot, and suggested more than once that they go to town and secure a car. It further appears that appellant's presence with Reynolds was a surprise to the "Houston boys" because they debated whether they would let him go with them. It was only after Reynolds strongly recommended him, and upon appellant's promise to do as he was directed, that they finally consented to take him along with them. The first active part appellant ever took in guarding Kirby occurred at

Corsicana where appellant with a shotgun, and one of the "Houston boys" with a pistol, kept Kirby under guard while the others went with the car after gasoline. We believe, under all the facts and circumstances, that the court should have charged on circumstantial evidence.

For the reasons stated the writer believes appellant's motion for rehearing should be granted, the judgment of affirmance should be set aside, and the judgment of the trial court should be reversed and the cause remanded, and therefore, respectfully enters his dissent to the conclusions of his brethern.

### ON APPELLANT'S APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

CHRISTIAN, Judge.

It appears from the application for leave to file second motion for rehearing that, with one exception, it reiterates contentions made and squarely met in the opinions of the court. While not discussed in the opinions of the court, the question whether appellant was entitled to the instruction mentioned in his application for leave to file second motion for rehearing was considered by the court, and the conclusion reached that the evidence failed to raise an issue calling for such instruction.

The application for leave to file second motion for rehearing is denied.

The foregoing opinion of the Commission of Appeals has been examined by the Judges ofthe Court of Criminal Appeals and approved by the Court.