Herbert N. CAMP, Appellant,

v.

The STATE of Texas, Appellee.

No. 44416.

Court of Criminal Appeals of Texas.

Jan. 26, 1972.

Harry A. Nass, Jr., Emmett Rahm, San Antonio, for appellant.

Ted Butler, Dist. Atty., and Lucien B. Campbell, Asst. Dist. Atty., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for attempting to pass as true a forged instrument. The jury returned the verdict of guilty and the court assessed the punishment at five years, probated.

The appellant was indicted in a two-count indictment alleging forgery and attempting to pass as true a forged sales invoice.

The sufficiency of the evidence is challenged.

The State's principal witness, Daniel Edward Swayze, testified that on February 27, 1969, Calvin Surtees, owner of the Bargain Barn Furniture Store in San Antonio, gave him three copies of an invoice for four air conditioners from Jorrie's Furniture Store and directed him to go to Jorrie's warehouse to pick up the merchandise. Swayze went to the warehouse but did not pick up the merchandise because the invoices were not listed or posted. The invoices bore the purported signature of Gus Hernandez, a salesman for Jorrie's. Attached to the invoices was another piece of paper containing handwritten instructions for Swayze.[1] The warehouseman kept all three copies of the invoice as well as the attached paper.

Swayze then returned to the Bargain Barn and told Surtees and appellant, who was then present, what had happened. He testified that Surtees and appellant got a little excited. Surtees and appellant conversed with each other and then Surtees told Swayze not to worry for everything would be taken care of. Surtees paid Swayze $20.00 instead of the promised $50.00. Then, either that same day or the next day, Surtees and appellant told Swayze not to talk about this occurrence to anyone, to tell a false story if questioned, and not to identify either one of them.

Swayze further testified that about one week prior to February 27, 1969, Surtees had sent him to Jorrie's to pick up three color television sets. The appellant was present in the store at some time on this day, but Swayze did not recall whether appellant was present when he was sent, or, if so, whether he overheard any of the conversation between Surtees and Swayze. Swayze did not see appellant give Surtees any paper. He was paid $50.00 by Surtees for this pickup.

On direct examination, Swayze testified that he quit his job about a week after the second trip to Jorrie's because he "didn't want to get involved any deeper than what was going on."

1. The record contains no evidence as to the authorship of this paper.

On cross-examination Swayze testified as follows:

"Q. Now, was it customary for Mr. Surtees to pay you $50 for making a pickup?

"A. No, sir.

"* * *

"Q. All right. You didn't think there was anything unusual about being handed a $50 bill for making a pickup?

"A. Not at that time. He call—

"Q. Was it sometime later that you began to be concerned about this situation?

"A. After I returned from the first trip.

"Q. After you returned from the first trip?

"A. Yes, sir.

"Q. So, you began to—I think your words were a while ago on direct examination, feeling that you were mixed up in something or involved I think is the word you used, correct me if I'm wrong—after you returned from the first trip; is that correct?

"A. Yes, sir.

"Q. And you felt this way at the time that you made the second trip; is that correct?

"A. Yes, sir."

A. E. Harris, whose purported signature appeared on the invoices as the buyer, testified this was not his signature; he had ordered no air conditioners from Jorrie's,

and gave no one permission to sign his name to the invoices.

Charles Gardner, manager of the Jorrie Northside store, testified that the writing on the invoices "looked like" appellant's handwriting. He said that Gus Hernandez had told him that he, Hernandez, did not sign his name to the invoices or give anyone permission to do so. He further stated that it was customary for one salesman to begin an invoice and another to finish it. Jorrie's invoices, he testified, were easy to obtain as they were kept in salesmen's clipboards at the front of the store open to the public.

The warehouseman who refused to give the merchandise to Swayze because it was not in stock said the handwriting on the invoices looked like that of the appellant.

A handwriting expert compared the invoices given by Swayze to the warehouseman with invoices the appellant admitted he had written and said they were in his opinion written by the same person.

Appellant took the stand and denied writing the invoices but explained that it was possible he could have started the ticket, never completed it and that anyone could have picked it up from the back cashier's office because they often laid there as many as five days before they were processed.

In his first ground of error the appellant contends the evidence was insufficient to convict him as a principal in the offense of attempting to pass as true a forged instrument. He focuses our attention on the law of principals which is set out in Articles 65–69, Vernon's Ann.P.C. Middleton v. State, 86 Tex.Cr.R. 307, 217 S.W. 1046, sets forth six situations in which a person may become a principal in the commission of a crime:[2]

2. See the discussion in Hoover v. State, Tex.Cr.App., 390 S.W.2d 758; McClelland v. State, Tex.Cr.App., 373 S.W.2d 674; Holt v. State, 160 S.W.2d 944 (144 Tex.Crim.R. 62, 1941); Hardie v. State, 140 Tex.Cr.R. 368, 144 S.W.2d 571. For a discussion of the law of principals see Morrison & Blackburn, The Law of Principals, Accomplices and Accessories, 1 V.A.P.C. XIII (1952). There the distinction between principals and accomplices under our statutes was criticized.

"(1) When A. actually commits the offense, but B. is present, knowing the unlawful intent, and aids by acts or encourages by words.

"(2) When A. actually commits the offense, but B. keeps watch, so as to prevent the interruption of A.

"(3) When A. is actually executing the unlawful act, and B. engages in procuring aid, arms, or means of any kind to assist while A. executes said unlawful act.

"(4) When A. actually commits the offense, but B., at the time of such commission, is endeavoring to secure the safety or concealment of A., or of A. and B.

"(5) When A. employs an innocent agent, or by indirect means causes the injury, or brings about the commission of the offense.

"(6) When A. advises or agrees to the commission of the offense, and is present when the same is committed, whether he aid or not." Id., at 1052–1053.

No evidence in the present case shows the appellant to have been present during the actual commission of the offense nor to have been actually doing anything associating him with the execution of the offense at the very time it was done. Hence, the only possible association of appellant with the offense as a principal would be by procuring an innocent agent or by other indirect means. See Article 69, V.A.P.C.

■ Appellant contends the jury's finding him guilty of attempting to pass a forged instrument effectively determines his innocence of the forgery. Hence, he could not be connected with the offense as author of the forged instrument. Under the charge given the jury such is not the necessary result of their finding him guilty of attempting to pass a forged instrument. The offenses of forgery, Article 979, V.A.P.C., and of passing or attempting to pass as true a forged instrument, Article 996, V.A.P.C., are separate offenses. Terry v. State, 149 Tex.Cr.App. 110, 191 S.W.2d 736; Hooper v. State, 30 Tex.App. 412, 17 S.W. 1066. The jury was instructed only that the appellant could not be convicted of both offenses in the same prosecution. While Article 1005, V.A.P.C., bars subsequent prosecution for forgery when a conviction is had for passing or attempting to pass a forged instrument based on the same transaction or same forged instrument, such does not mean that, where both offenses are charged in a two-count indictment, conviction of attempting to pass a forged instrument necessarily means a finding of innocence on the other count for the purposes of that same prosecution. However, even if the evidence does indicate that the accused forged the instrument in the present case, this would be insufficient to associate him as a principal in the offense of attempting to pass a forged instrument by another.

■■ We find the evidence insufficient to connect appellant with the procurement of an innocent agent. Swayze's testimony that he had made a previous trip and had been paid $50.00 when he was not usually paid that much for a delivery made him believe that he was involved before he made the trip in question and precludes his being an innocent agent.

The evidence in this case does not, however, rule out that the appellant acted as an accomplice by preparing the forged instrument prior to the commission of the offense for the purpose of assisting the principal in its execution, Article 70, V.A.P.C., or as an accessory by aiding the principal to evade arrest or trial, Article 77, V.A.P.C.[3]

3. There appears to be no reason to continue classifying parties to the commission of an offense as accomplices or principals and to demand that the State prove the classification in order to support a conviction. Under our statutes the punishment is the same. Both are wrongdoers either before or at the time of

Appellant asserts other grounds of error which need not be discussed due to our disposition of this case.

The judgment is reversed and the cause remanded.

MORRISON, J., not participating.

---

the commission of the unlawful act. Most jurisdictions have abolished the distinction.

There is no distinction between principals and accomplices in misdemeanors; a party who would be an accomplice if the offense was a felony is a principal if the offense is a misdemeanor. If the defendant comes within either the definition of an accomplice or a principal, he is a prin-cipal in a misdemeanor case. 2 Branch's Ann.P.C.2d, Section 727, page 24, and cases there cited.

This note is added so that the Legislature, if it sees fit, might amend the statutes to abolish the distinction in felony cases. See generally Morrison & Blackburn, The Law of Principals, Accomplices and Accessories, 1 V.A.P.C. XIII (1952).