## OLA DEE MASSIE V. STATE.

No. 24027. October 6, 1948.
Appellant's Motion for Rehearing Granted November 24, 1948.
State's Motion for Rehearing Denied March 9, 1949.

*Camp and Camp,* Cameron, and *H. C. Beard,* Waco, for appellant.

*W. A. Morrison,* District Attorney, Cameron, *Spurgeon Bell,* Special Prosecutor, Houston, and *Ernest S. Goens,* State's Attorney, Austin, for the state.

*W. N. Stokes, Jr.,* Houston, *amicus curiae.*

BEAUCHAMP, Judge.

Appellant was convicted on an indictment charging that she forcibly detained, confined, concealed, and enticed away Mrs. Mary Johnson, her aunt, for the purpose and with the intent of taking, receiving, demanding and extorting from her certain valuable property set out and described in the indictment. The jury found her guilty and assessed a penalty of five years in the penitntiary.

The appellant, Dr. Ola Dee Massie, lives in the City of Waco and maintains a home outside of the city, as well as a room or apartment in an uptown hotel. Her aunt, Mrs. Johnson, with whom she had lived for a time prior to her marriage, was a

resident of Cameron in Milam County. She was under the treatment of a physician. Under his direction she went to a hospital in Cameron for care and treatment. Defendant came to Cameron and attempted to induce her aunt to go to a hospital in Waco, but the aunt refused to go. It is the state's evidence that defendant, with another woman, induced the aunt to get into the car for the purpose of returning to her home in Cameron. Instead of taking her there appellant forcibly carried her to Waco and placed her in a hospital, contrary to her will. Following this, the state's evidence further shows that appellant secured the keys to Mrs. Johnson's home and to her bank box, from which appellant gained possession of the various articles enumerated in the indictment. These were carried to Waco without the knowledge and consent of the owner and were later recovered from the possession of the appellant by reason of a search warrant which the owner had issued, after freeing herself from the hospital where appellant had placed her.

While appellant did not testify in her own behalf, the defense is that she was interested in the welfare of her aunt; that she believed her to be mentally incompetent to attend to her affairs; that she wanted her in Waco where she could look after the aunt's health and that in pursuance of this interest she did look after her, provided nurses for her at appellant's own expense, at least in part, and proceeded in an effort to have herself appointed guardian for the aunt, to look after her property. On this basis she denies any attempt to kidnap the aunt as charged in the indictment. The evidence she introduced in this regard raised the issue and it appears that it was properly submitted to the jury.

Appellant brings this appeal and asks for a reversal based on three bills of exception, the first and third of which complain of the refusal of the court to admit in evidence a letter written by Dr. Avent, of Waco, which appellant presented to an attorney in Cameron whose assistance she was seeking to institute the guardianship proceeding. The letter expressed the opinion of Dr. Avent that Mrs. Johnson was incompetent. These bills are qualified by the court who stated that Dr. Avent was present in the courthouse and available as a witness on the subject. He sustained the objection on the ground that the letter was hearsay, that it was not properly proven to contain the signature of Dr. Avent, together with other objections made by the state. Under the qualification of the bill there could be no question that the court's ruling was correct on these issues.

Among the articles alleged to have been taken was a diamond

brooch valued at $2500. This was not recovered by the officers under the search warrant by which the other property was secured. In reply to a question by the sheriff, appellant stated that she had turned the brooch over to her lawyer. The record shows that she had two firms of lawyers, one in Waco and the firm of Camp & Camp, of Cameron and Rockdale. The evidence does not show whether either or all of these attorneys had been employed at the time she made the statement. Other than as herein stated, we find no specific part that the brooch played in the case. It probably had a greater value than other property, and was not recovered by the officers, nor by Mrs. Johnson, its owner, at the time of the trial.

For some purpose which the record does not disclose, the attorney for the state referred to this article in his closing argument, in the following language:

"Her (complaining witness Mrs. Johnson's) husband has been dead for 25 years; she is old and she is holding that brooch as a life insurance policy, her life protection and her last protection against the inevitable she doesn't have it now. That brooch is gone. I now call upon Mr. Camp to present it to this court."

At the time he did this he pointed his finger at Mr. E. A. Camp.

In qualifying the bill the court said he considered the objection made to it too vague and indefinite. He approved the special requested charge and read it to the jury in which he withdrew from the jury's consideration the demand made by the attorney in his argument.

We are unable to understand, from a careful consideration of the facts of the case, what purpose the argument served. The appellant has not made it clear just what injury was done by it. If the attorney for appellant had responded to the request and handed over the jewel, it could have thrown no light on the case as it was presented to the jury. If he had been forced to do so it would not have had any probative force either way. It was admitted that she had the brooch, that it had not been turned over to the officers, that it was of the value of $2500, or, if not admitted, the facts were in no way denied. It is inconceivable that this request created any additional prejudice in the minds of the jury. She had consistently failed and refused to deliver the brooch to her aunt up to the time of the trial and that fact was clearly before the jury.

We have been unable to find that this particular question has been discussed in a similar case within this jurisdiction. The state cites the case of Tabor v. State, 107 S. W. 1116. In an opinion written by Judge Henderson, and approved by the court subsequent to his death, a similar situation arose but we find nothing in the opinion that is particularly helpful in the case now before us. At most, it does not help the contention of appellant.

Finding no reversible error, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant insists that the facts herein shown do not constitute the offense of kidnapping for the purpose of extortion; that although it may be shown that Ola Dee Massie did take Mrs. Mary Johnson away from the city of Cameron against her consent, nevertheless, there is not shown any effort at an extortion of any kind. Although she did move many valuables of Mrs. Johnson to the house of Mrs. Massie and did place her in the Providence Hospital in Waco, still it is contended that such acts are not shown to have been for the purpose of extorting anything from anybody. It is true that appellant did possess herself of a diamond brooch of the probable value of $2500 and still holds such brooch and refuses to surrender it to the officers under a search warrant, but it is not shown that she extorted same from the prosecuting witness.

Webster's New International Dictionary defines "extortion" to be the "act or practice of taking or obtaining anything from a person by illegal use of fear, whether by force, threats or by any other undue exercise of power.

While the testimony herein might have shown an illegal possession of this brooch, as well as other property of the complaining witness, still we do not think that such possession comes under the definition of an extortion, and thus believing, we express the opinion that the offense of kidnapping is not shown by the evidence.

We have examined the cited case of Crum v. State, 131 Tex. Cr. R. 631, 101 S. W. (2d) 270, and are of the opinion that the facts shown therein are at variance with those in this cause.

In that case the extorting was done by threats, whippings, beatings and other mistreatments, but none of such is shown herein.

There is another serious question presented to us relative to the trial court's charge. Appellant's contention herein was in effect that the complaining witness was her aunt and was enfeebled by age and other infirmities; that she needed the attention of appellant who had lived in her aunt's home until appellant's marriage; that the aunt needed medical attention and appellant could much better look after this aunt in Waco, where the appellant resided, rather than travel from Waco to Cameron, where the aunt had her home; that she was moving the aunt to a hospital in Waco in order that she could better be looked after and cared for; that the only purpose of her removal to Waco was to look after and minister to her relative. The trial court presented this defense in the following manner:

"You are instructed if you believe from the evidence, or if you have a reasonable doubt thereof, that the only purpose of defendant in doing any act in evidence before you was to care for and minister to Mrs. Mary Johnson, unless you further find from the evidence *beyound* a reasonable doubt, that the defendant also had the specific purpose or intent of taking, receiving, demanding or extorting from the said Mrs. Mary Johnson the property listed in the first count of the indictment, then you will acquit the defendant and say by your verdict 'Not Guilty'."

This paragraph of the court's charge was properly objected to more than once in appellant's objections and exceptions to the court's charge. Among other objections to such portion of the charge, we find the following:

"The defendant further excepts and objects to the Court's charge as a whole because it fails to submit in an affirmative manner this defendant's defenses clearly raised by the evidence herein and especially in that it fails to instruct the jury that even though they should find and believe *beyound* a reasonable doubt that the defendant did unlawfull take the property mentioned in the indictment, they still should not convict the defendant unless the jury further finds and believes, *beyound* a reasonable doubt that at the time the defendant did forcibly detain, forcibly take, forcibly confine, forcibly conceal and fraudulently entice away the said Mrs. Mary Johnson, then they must acquit the defendant and say by their verdict, 'not guilty' unless they further find *beyound* a reasonable doubt that the defendant then and there had the specific intent to so take the property named in the indictment and she asks the court to

amend its charges and to include the above defense therein and to submit the same to the jury by appropriate terms and in an affirmative manner."

Again, appellant further excepted to the court's charge in paragraph 10 of her objections and exceptions to the charge, which reads as follows:

"The defendant further excepts and objects to the Court's charge for and because it does not affirmatively instruct the jury in substance that if the defendant acted in good faith and in substance, for the purpose of caring for her aunt, the prosecuting witness, Mrs. Mary Johnson, then she would not be guilty of any offenses herein. The defendant says that the question of the defendant's purpose and intent in doing the acts mentioned in the testimony was done in good faith and for the purpose of caring for her aged aunt and this defendant is entitled to an affirmative charge submitting that issue and phase of the facts and the law to the jury."

It is clear that the paragraph of the charge objected to, not only is the same contradictory in its terms, but it also requires the jury to first believe that appellant's *only purpose* was humane and must further disbelieve the state's testimony before an acquittal could be had. The burden is on the state to prove its case beyond a reasonable doubt, and if the jury believed the appellant's defense, her right to an acquittal immediately arose and did not depend on a further or "unless" they entertained a nonbelief in the state's evidence. The charge merely means that even though the jury believed appellant's *only purpose* was to minister to her aunt, nevertheless, they could not acquit unless they further disbelieved the state's case. Appellant was entitled to have her affirmative defense presented untrammeled by the state's evidence unfavorable to her.

The charge complained of, which is above set forth, shifted the burden of proof from the state to the defendant and required of her to not only create a reasonable doubt in the minds of the jury by her offered defense, but also that she should cause the jury to not believe the proffered state's case. This was error, and we think she should only have been required to create a reasonable doubt by establishing her defense before the jury.

The charge itself is contradictory in a further respect in that it first requires the state to find that appellant's *only purpose* was to better look after her aunt, and yet limiting the

phrase "only purpose" with the unless clause relative to a belief in the state's case.

In 24 Tex. Jur., pp. 562-563, sec. 82, it is said:

"Upon proper request a defendant is entitled to an affirmative presentation of defensive theories which are raised by the evidence—that is to say, he is entitled to a distinct and affirmative, as distinguished from an implied or negative charge as to his defense. The charge should be pertinent and distinct; it should apply the law to the facts in such a manner as to present the defenses of an accused untrammeled by contentions of the state or statements as to the law of principals."

See Talley v. State, 102 Tex. Cr. R. 323, 277 S. W. 691, and other cases cited.

Again, it is said in 24 Tex. Jur. p. 535, sec. 65, that "the accused should have his theory presented pertinently, plainly and affirmatively, untrammeled by unfavorable conditions", citing many cases.

Appellant's motion for a rehearing is granted, the order of affirmance is set aside, and the judgment is now reversed and the cause remanded.

ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

There is such a diversity in the construction of the statute under which this prosecution proceeds by the representatives of the state and appellant that some further analysis of it seems pertinent. So far as we have discovered or that has been pointed out ot us, the case of Crum v. State, 131 Tex. Cr. R. 631 (101 S. W. 2d 270), is the only one with which this court has dealt since the present statute was enacted and the facts in that case are so different from those in the present one as to be of little aid in the instant controversy.

It will be recalled that when this statute was enacted in 1931 (Acts 42nd Legislature Regular Session, p. 12), the acts of kidnapping, both adults and children, and holding them for ransom was quite prevalent and the passage of this statute to meet such condition resulted. As originally passed, the law provided, in substance, that if the person kidnapped was returned without serious injury having been inflicted, the punishment

should be by confinement in the penitentiary for any term of years not less than five. At the First Called Session of the 43rd Legislature in 1933 (Acts 43rd Legislature, 1st Called Session, p. 51), the provision last above referred to was repealed, and the penalty affixed to kidnapping was death or confinement in the penitentiary for any term of years not less than five. The emergency clauses in each of the laws will throw light on the intent of the legislature in enacting the law which is now operative. The law appears in Vernon's Ann. Texas P. C. as Art. 1177a.

We are inclined to believe that in our opinion on appellant's motion for rehearing, released on November 24, 1948, the question of "extortion" was unduly and unnecessarily emphasized. Appellant was not charged with "extortion," she was charged with kidnapping. Indeed the offense denounced was not named in the statute at all. It simply said that one who committed the prohibited acts was *"guilty of a capital felony."*

The statute is here set out with our underscoring to emphasize what seems pertinent to arrive at its meaning:

"That every person who forcibly detains, *or* forcibly takes, *or* forcibly confines, *or* forcibly conceals, *or* fraudulently entices away any other person *for the purpose or with the intent of taking or* receiving *or* demanding *or* extorting *from the person so restrained, or* his relatives *or from any other person,* any money or valuable thing, *or* every person who by force, threats, fraud, duress, or enticement takes, confines, kidnaps, conceals or entices away any other person *for the purpose or with the intent* of taking or receiving, *or* demanding, *or* extorting from the person so restrained or kidnapped, *or his relatives, or from any other person,* any money or valuable things, is guilty of a capital felony and upon conviction shall be punished by death or confinement in the penitentiary for any term of years not less than five."

It seems quite clear that if the accused does any of the acts mentioned "for the purpose or with the intent" of securing from the person kidnapped, *or* from his relatives, *or* from *any other person,* any money or valuable thing, the offense is complete. Like the burglary statute, if one breaks into a house with *intent* to commit theft, the offense of burglary is complete although the theft may not be effected. Under the statute, if the purpose or intent of the kidnapping was to secure money or a valuable thing, it would appear immaterial whether it was intended to secure it from the person kidnapped, *or* from his relatives, *or*

from *any other person,* or when or where it was acquired, for the statute fixes the venue as follows:

"The aforesaid penalty applies in every case regardless of whether the offense originated within or without the State and the venue of the offense shall lie in the County where the kidnapping occurred, or where the person was held or detained or in any County through which the kidnapped person was taken."

The indictment alleges that appellant did the acts complained of "for the purpose and with the intent of taking, receiving, demanding and extorting from Mrs. Mary Johnson," the valuable things named in the indictment. The trial judge charged the jury that if they believed from the evidence beyond a reasonable doubt that appellant did any of the things charge against her for the purpose *or* with the intent of "taking, *or* receiving, *or* demanding, *or* extorting from the said Mrs. Mary Johnson valuable things as charged in the indictment," to find appellant guilty.

In our opinion on appellant's motion for rehearing, we said, "while the testimony herein might have shown an illegal possession of this brooch, as well as other property of the complaining witness, still we do not think that such possession comes under the definition of an extortion, and thus believing, we express the opinion that the offense of kidnapping is not shown by the evidence." A further consideration of the record and the statute in question leads us to believe we were in error in saying that the offense of kidnapping was not shown by the evidence, because the term "extortion" was over emphasized to the exclusion of other phases of the statute, and that part of our said opinion above quoted is withdrawn.

Under the statute, although the acts which constitute kidnapping may be established, still the offense is not complete unless it also be shown that at the time the acts were committed there existed in the mind of the perpetrator the *purpose or intent* of securing money or some valuable thing, and if there be a reasonable doubt as to the existence of such purpose or intent the prosecution must fail. Appellant was entitled to have the jury so directed in a clear and untrammeled instruction to that effect. The charge upon that point is set out in our opinion on rehearing to which reference is made. We cannot escape the conclusion that the charge was confusing and contradictory. There could not have been in appellant's mind at the time the acts were committed the *"only* purpose" of caring for and ministering to Mrs. Johnson, and at the same time a *"specific*

126

*purpose* or *intent*" of taking, demanding, receiving, or extorting from her the property described. This matter was considered in our opinion on appellant's motion for rehearing and was, we think, correctly decided. It therefore follows that the judgment should remain reversed for the error in said charge, and that the state's motion for rehearing should be overruled, and it is so ordered.