### BILL TYLER V. STATE

No. 27,975. February 22, 1956.
Appellant's Motion for Rehearing Denied
(Without Written Opinion) April 11, 1956.

*McCarthy, Rose & Haynes,* by *George S. McCarthy,* Amarillo, and *Arthur Green,* Victoria, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

Appellant was convicted under Article 1177a, V.A.P.C., of kidnapping for extortion and assessed punishment of 35 years in the penitentiary.

The conviction is under the second count of the indictment which was drawn under that provision of the statute that provides:

"Every person who by force, threats, fraud, duress, or enticement takes, confines, kidnaps, conceals or entices away any other person for the purpose or with the intent of taking or receiving, or demanding, or extorting from the person so restrained or kidnapped, or his relatives, or from any other person, any money or valuable things, is guilty of a capital felony * * *"

The evidence shows that Pete Rydolph was a colored man of considerable financial means who lived alone on his farm and ranch near the town of Bloomington in Victoria County.

His testimony shows that on Friday night of May 14, 1954, shortly after dark, two cars drove up to his house, the appellant and Freda Bills being in one, and a man by the name of Sidney Miller and an unidentified man in the other car. Miller told Rydolph to get in the car, and after Miller had reached for his pocket and threatened to kill him, Rydolph got in the car with Miller and the unidentified man and they drove to a tourist court in the city of Victoria with the other car following. At the tourist court he was forced to take off his clothes and get in bed with the woman Freda Bills. While lying in the bed with her, after the lights had been turned off he saw the flash of a light and heard three clicks of a camera. At Miller's

direction he was then taken by the appellant and the unidentified man in a car, and held in their custody during the night, and until his release the next morning. On several occasions when they would stop the car he would ask that they take him home and was told that they were going to keep him there until the "big boss came." Around 8:30 o'clock on Saturday morning Miller appeared and told Rydolph it was all over the air and in every newspaper in the United States that he had raped a white woman. Later Miller again appeared and asked Rydolph if he had any money. He again asked that they take him home and Miller stated, "No, we won't take you home until we get what we want," and threatened to kill him. After Miller had demanded fifty thousand dollars he then told Rydolph he wanted thirty thousand or "We are going on or we ain't going to stop." Rydolph then told them to drive to Victoria. Miller then got in the car with the appellant and they drove to Victoria and on the way told Rydolph to get the money in a paper bag. When they arrived in Victoria, Rydolph got out of the car, went to a grocery store and secured a paper sack and then went to the Victoria Bank and Trust Company, where he withdrew from his account the sum of thirty thousand dollars in cash. Miller entered the bank with him and stood in the next line to him while he was writing his check for the money. After writing the check he went to the vault in the basement, where the money was counted out to him, came up and went outside where Miller was standing across the street. He and Miller then went to where appellant was in the car and drove off. Miller then counted the money in the presence of Rydolph, the appellant, and the unidentified man, and after driving back to Victoria, gave Rydolph five dollars and threatened to kill him if he told anybody about the transaction. Rydolph got out of the car, got a cab and went to his home, and on the following Monday reported the matter to the sheriff.

Rydolph testified that the reason he got in the car when the parties came to his home was because he was afraid and scared that they would kill him due to the threats made by Miller; that he did not want to go with them and remained with them because of the threats and fear for his life, and that he gave the money to them to save his life.

Leo Schell, the assistant cashier at the bank, corroborated the testimony of Rydolph as to the withdrawal of the thirty thousand dollars in cash from the bank on the morning of May 15.

The state called as a witness Travis Upton, who was also under indictment for the kidnapping, who testified that on May 11 he was with the appellant in Victoria, at which time appellant asked him where Pete Rydolph lived, and asked him if he had any money; that he told appellant where Rydolph lived, and the next day when he was out on the Bloomington highway he met the appellant and a woman in a car; that at that time appellant said to him, "We have been out there but we can't find Pete Rydolph at home." "If we find the place I know we can get some money out of him." "If we get some money out of him I see that you straight. I straighten you;" that on the following Saturday afternoon, in response to a call from the appellant, he went to San Antonio where the appellant gave him three thousand dollars in cash and that after he and the appellant had been arrested he saw the appellant in San Antonio and at that time the appellant told him how the money had been secured from Pete Rydolph.

Appellant did not testify or offer any evidence in his behalf.

We shall first consider the sufficiency of the evidence in the light of appellant's contention that it failed to show a complete act of kidnapping for extortion under the statute.

Appellant insists that the act of kidnapping was never completed because the injured party, Rydolph, before paying the money, had been released from any form of detention or restraint on the morning of May 15 while he went to the bank to secure the money; that during such time he was a free agent and his action in returning and delivering the money to the appellant and his associates was not for the purpose of securing his release from custody, but under his testimony was because he was afraid of his life.

We think a fair interpretation of the provisions of Article 1177a, supra, under which this prosecution was based, overrules appellant's contention.

As we interpret the statute, the offense of kidnapping for extortion is complete when a person is unlawfully restrained by another by one of the means described therein and where the restraint is for the purpose and with the intent of taking, or receiving, or demanding, or extorting from the person so restrained or kidnapped, or his relatives, or from any other person, any money or valuable thing.

In Massie v. State, 153 Tex. Cr. R. 116, 217 S.W. (2d) 1001, Judge Hawkins, speaking for this court in passing on the state's motion for rehearing, after setting out the provisions of Article 1177a, supra, said:

"It seems quite clear that if the accused does any of the acts mentioned 'for the purpose or with the intent' of securing from the person kidnapped *or* from his relatives, *or from any other person,* any money or valuable thing, the offense is complete."

Under our interpretation of the statute the evidence shows a complete act of kidnapping for extortion. The testimony of Rydolph shows that he had been under the restraint of appellant and his companions during the entire night of May 14th and up into the morning of May 15th before he was released. That he was being restrained for the purpose and with the intent of taking, receiving, demanding, or extorting money from him is clearly shown. The fact that he may have been released after such restraint and later paid the money because he was afraid of his life in the future and not for his release was immaterial. Under the statute the payment of money by the person restrained is not an essential element of the offense.

We have considered the case of Hardie v. State, 140 Tex. Cr. R. 368, 144 S.W. (2d) 571, cited by the appellant. The case holds that the detention of a victim of kidnapping is a continuous thing, with which principle we agree, but it is not authority for appellant's position that the evidence is insufficient in the case at bar.

The court in his charge instructed the jury on the law of principals and defined the offense in the terms of the statute. The issue of appellant's guilt was submitted to the jury upon their finding that appellant, as a principal with his companions, or either one of them, did unlawfully by force, threats, fraud, duress or restraint, take, confine, kidnap, conceal or entice away Pete Rydolph for the purpose and with the intent of taking, or receiving, or demanding, or extorting from the said Pete Rydolph a valuable thing, to-wit: money. The jury was further instructed to acquit the appellant unless they believed that the appellant did the acts with the specific intent and purpose of taking, receiving, demanding, or extorting money from Pete Rydolph.

Appellant objected to the charge on the ground that it did not instruct the jury that the kidnapping must be continuous

from its inception until the act alleged to have been committed was complete or attempted to be complete, and submitted two special requested charges which were by the court refused which would have instructed the jury to acquit the appellant if they found that Pete Rydolph at any time from the original act of detention to the time of the payment of any money was not illegally detained, falsely imprisoned, or restrained of his liberty by the appellant or any of his associates, or at any time during his detention was free of restraint or at liberty to free himself from restraint.

We think the issue of appellant's guilt was properly submitted in the court's charge and no error is shown in the refusal to give the special requested instruction.

Upon Rydolph's detention and restraint for one of the purposes named in the statute the offense was complete. As we have heretofore stated, the fact that he may have thereafter been released and free of detention before he paid the money was immaterial as the offense had already been committed and complete.

In his brief appellant questions the manner in which the special venire and talesmen were secured and insists that he was tried by an illegally constituted jury. The question is raised for the first time on appeal as no motion to quash or objection was made in the trial court. In support of his contention appellant has filed in this court an affidavit of one of his attorneys, which contains statements concerning the manner in which the jury was selected. This question is not properly presented for review as this court does not consider ex parte affidavits setting up matters not shown by the record. See 4 Tex. Jur., page 178, Sec. 128, and cases cited thereunder.

In the second count of the indictment the valuable thing which it was charged that appellant intended to take was described as "a valuable thing, to-wit: money." The description of the valuable thing as "money" was sufficient under the terms of the statute. See Branch's Ann. P.C., Art. 1149, page 1421.

Finding the evidence sufficient to support the conviction, and no reversible error appearing in the record, the judgment is affirmed.

Opinion approved by the Court.