**Rodney Gene BROADWAY**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections.**

**Civ. A. No. 4–1432.**

United States District Court,
N. D. Texas,
Fort Worth Division.

Sept. 30, 1971.

Don Gladden, Fort Worth, Tex., for plaintiff.

Crawford C. Martin, Atty. Gen., Austin, Tex., by Robert C. Flowers and Dunklin Sullivan, Asst. Attys. Gen., for defendant.

## OPINION

BREWSTER, District Judge.

This habeas corpus action was brought for the purpose of seeking to vacate petitioner's judgment of conviction and sentence in Cause No. 72364, State of Texas v. Rodney Gene Broadway, in Criminal District Court No. 3, Tarrant County, Texas.

In late 1965 and the first month of 1966, Rodney Broadway and a confederate, Burton Tarbell, were engaged in the past time of prowling the streets of Fort Worth in an automobile during late night and early morning hours until they located a woman driving alone in a car. Their practice was to follow the woman to her home, where one of them would jump out, hit her over the head as she walked from her driveway to her front door, and drag her, caveman style, to their car, take her to a lonely place on the outskirts of town and rape her several times, with oral sodomy committed on her en route. They were caught red-

handed in their last attempt, and admitted being involved in certain other similar transactions where the rapes were consummated. However, they denied being implicated in any of such incidents in Fort Worth where the women were killed. A jury convicted Broadway of rape by force on Mrs. Ethel Kennemer in a transaction which occurred about a week before his arrest, and assessed his penalty at life imprisonment. The conviction was affirmed in Broadway v. State, Tex.Cr.App., 418 S.W.2d 679 (1967). It is that judgment and conviction which he here seeks to set aside.

Broadway was represented on his trial of the rape case by able and experienced counsel.[1] The defense was insanity. Though the record of that trial[2] shows that they were familiar with the fact that a proceeding had originally been filed in the Juvenile Court and that Broadway was sixteen years of age at the time he was indicted, they raised no question about the validity of the indictment or the authority of the district court to try Broadway as an adult after he reached seventeen years of age.

The attack on the conviction grows out of the fact that Broadway was a juvenile under Texas law at the time of the commission of the offense. The rape of Mrs. Kennemer occurred on January 13, 1966. Broadway was born on August 14, 1949, and was therefore sixteen years of age in January, 1966. The indictment against him was returned on April 19, 1966. He was tried on October 25, 1966, after he had become seventeen.

Broadway claims that the Juvenile Court had exclusive jurisdiction over him during his minority insofar as this offense was concerned unless it relinquished such jurisdiction to the district court in the manner provided by the Juvenile Delinquency Act in force in Texas in 1966; and that the attempt here made by the Juvenile Court to waive jurisdiction was void because it violated his constitutional right to a hearing, with him and his counsel present, after due notice to him and his parents and to confrontation with witnesses, under the rules laid down in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

The respondent says: (1) The conviction is valid under the well recognized rule in Texas that a male person over seventeen years of age may be tried as an adult for an offense committed before his seventeenth birthday, and that the age of the accused at the time of his trial was the controlling factor insofar as the respective powers of the district court and the juvenile court were concerned. (2) Questions as to validity of the indictment and the proceedings against Broadway in district court on account of his age did not render the proceeding void, and Broadway waived his right to complain by not raising such questions in the criminal trial. (3) If it should be determined that a waiver of jurisdiction on the part of the Juvenile Court was necessary, the proper procedure is not to set aside the conviction, but to have a constitutional *de novo* hearing by the Criminal District Court No. 3 for the purpose of making a *nunc pro tunc* determination of the propriety of waiving jurisdiction.

Though the petitioner's brief argues that no judge could fairly re-determine the question of waiver after knowing that a jury had returned a verdict of

---

1. His attorneys were Ardell M. Young and John B. McClane. Both are mature, able lawyers. Mr. Young, now judge of a state district court, was at the time a member of the long established law firm, Brown, Herman, Scott, Young & Dean. He is a Fellow of the American College of Trial Lawyers with extensive trial experience in both civil and criminal cases. Mr. McClane, a 1958 graduate of the University of Texas Law School, was at the time a member of the firm of McGown, Godfrey, Decker & Courtney, one of the leading law firms in Fort Worth.

2. The defendant's motion for psychiatric examination, testimony of Juvenile Officer Shaw on the trial, and the defendant's motion for new trial.

guilty, his trial brief filed herein concludes with the following:

"Petitioner respectfully asks this Court:

"(1) to order that he be immediately discharged from the custody of respondent;

"or in the alternative

"(2) to order:

"(a) that a constitutional redetermination of the propriety of waiver of juvenile jurisdiction be made by a Tarrant County Juvenile Court;

"(b) that a state district judge hold an examining trial to constitutionally redetermine whether the petitioner should have been remanded to the custody of the juvenile court, if necessary;

"(c) that the Tarrant County Grand Jury sitting on April 19, 1971 be re-empaneled to constitutionally redetermine whether the petitioner should have been remanded to the custody of the juvenile court if necessary."

Habeas corpus remedies in the state court have been exhausted. The application was denied by the state convicting court after a hearing with Broadway and his retained counsel present. That decision was affirmed by the Court of Criminal Appeals without a written opinion. There was some question as to whether the applicant was afforded an opportunity to present any evidence beyond court records; and for that reason, this Court decided to hear the matter anew to enable it to reach a decision in the light of all relevant evidence offered.

This Court has now held an extensive evidentiary hearing consuming about three hours during a night session and one-half of the following day, with Broadway and his two retained counsel present and participating. The testimony of twelve witnesses was heard, and many documents were received in evidence. Broadway, then twenty-one years of age and appearing to be mature beyond his years, testified in his own behalf, freely admitting the offenses. Good briefs have been filed by counsel for the respective parties. After thorough consideration of the evidence and the briefs and extensive legal research on its own, the Court has reached the conclusion that the application for writ of habeas corpus should be denied for the reasons hereinafter given.

At about 3:30 A. M. on January 13, 1966, Mrs. Kennemer, a 37 year old mother of two children, drove her husband to the bakery where he had to go to work at 4:00 A. M. All of the round trip drive of less than five miles from their home to the bakery and back was in Arlington Heights, a thickly populated residential area in the west part of Fort Worth, Texas. Mrs. Kennemer made the trip in her gown and a heavy top coat. As she neared her home on the return from the bakery, she got the impression that she was being followed by some persons in another car; so she started to hurry from her automobile into her house as soon as she stopped in her driveway. The other car pulled up fast, and the brakes were slammed on just after she had got her feet on the ground. Broadway jumped out, ran up behind her, and struck her a hard blow on the back of her neck near the base of head and followed with several more blows. He then dragged her in a dazed condition to his car, where she was put in the back seat with Broadway sitting on top of her. His cohort, Burton Tarbell, was under the steering wheel when they rode up, and remained in the car with the engine running at all times. As he drove away, Broadway was pushing Mrs. Kennemer down in the seat with his left arm, and had his clenched right fist cocked in a threatening manner. He repeatedly told her that he would kill her if she screamed. On the way from the Kennemer home to the lonely woods on the outskirts of town where they took her, Broadway moved off Mrs. Kennemer and began to tear at her clothes. When he got her gown up, he committed oral sodomy on her. He then changed places with Tarbell, and

Tarbell went through the same procedure. When they reached their destination in the woods, Tarbell raped Mrs. Kennemer in the back seat. He then got out of the car, and Broadway entered and raped her. Under threats, they then tried to make her commit oral sodomy on them. She gagged, and they abandoned that course; but Tarbell raped her again. It was nearing daylight by that time; and Mrs. Kennemer convinced them that if her children awakened and found her gone, they would call her husband and he would cause a search to be made for her. Broadway and Tarbell discussed what they should do with her. Broadway was skeptical of whether she would tell on them, and she thought from his talk and actions that he wanted to kill her. She begged for her life and promised not to report the matter to anyone. She convinced Tarbell, and he argued with Broadway that they had never killed any woman they thought would not tell on them. He finally persuaded Broadway that they would be safe in taking her back. They returned to the neighborhood of her home, and let her out far enough from her house to give them ample opportunity get away.

During the entire course of the ordeal, Mrs. Kennemer was threatened time after time with being killed if she screamed or did not do as she was told.

Mrs. Kennemer was with Broadway and Tarbell over two hours. A good part of that time was while they were driving on brightly lighted streets. They never had anything over their faces at any time. She had more than adequate opportunity to observe and study their faces as she sat between them in the front seat on the return trip. She heard Tarbell address Broadway as "Rodney" several times.

Mrs. Kennemer had pink toilet tissues wrapped around strands of her hair when she was abducted. It was held in place by bobby pins. Some holes were burned in one of the tissues by a cigarette Broadway was smoking at one time. She got his permission to take the piece of burned tissue out of her hair; and she dropped it with two bobby pins in it in the back of the car. She gave a general description [3] of the car to police when she reported the rapes. The stolen car used by Broadway and Tarbell during the abduction of Mrs. Kennemer was found abandoned about an hour after she made the report to the police. The burned pink tissue with the two bobby pins in it was in the back of the car when it was located by police.

Eight days later, on January 21, 1966, a Mrs. Ratcliff arrived at her home in Fort Worth after getting off from work around midnight. Tarbell grabbed her by the arm as she started up the front steps of her house, and attempted to pull her to a car at the curb. She put up a struggle, and Broadway jumped out of the car and grabbed her by the other arm. While they were attempting to drag her to their car, a young man who lived in the neighborhood heard the noise of the struggle and went to the scene to intervene. Broadway and Tarbell dropped their victim to leave. The young man beat them to their car and got the keys out of the ignition, and they fled on foot. A check on the license number revealed that the car belonged to Broadway's father. Upon inquiry of him, the officers learned who was using the car that night; and the arrest of Broadway and Tarbell followed when they were found three days later.[4]

At the time Broadway was taken into custody by juvenile officers on the morning of January 24th, he was on parole from the state training school for boys to which he had theretofore been committed as a juvenile delinquent. He confessed [5] to them that he had partici-

---

3. She knew it was a light colored car with red upholstery.

4. They stayed hid out until January 24, 1966.

5. None of Broadway's statement was used in the prosecution of him for the rape of Mrs. Kennemer.

pated in the commission of rapes on three women, including Mrs. Kennemer, in the assault on Mrs. Ratcliff, and in the theft of two automobiles for use in that kind of business.

The juvenile authorities had Broadway in their custody from the time of his arrest until March 2, 1966, before any new proceeding was filed against him. During that time, they submitted him for psychological and psychiatric examinations as provided for in the Texas Juvenile Delinquency Act.[6] On March 2nd, a petition to declare him to be a juvenile delinquent was filed in the Juvenile Court of Tarrant County because of the three rapes, the assault and the automobile thefts heretofore mentioned. He had formerly been handled by the same juvenile authorities on many occasions; and previous attempts to help him in every known way had failed. His father was a several times convicted felon whose offenses included burglary and robbery. The reports of the psychiatrist and the psychologist showed that Broadway was not psychotic or mentally defective, and that rehabilitation was not feasible.[7] With that information before it, the Juvenile Court, on the day following the filing of the delinquency petition, entered an order of transfer to the Criminal District Court No. 3, Tarrant County, Texas, "for appropriate criminal action". That order was entered without a hearing, without advance notice to

Broadway and his parents, and without participation by Broadway or any person representing him. There was never an adjudication that Broadway was a juvenile delinquent on the basis of any of the acts alleged in the petition filed on March 2nd. Petitioner claims that a valid order of the Juvenile Court waiving jurisdiction was necessary to give the Criminal District Court authority to try him, and that the order actually entered was invalid under the Kent and Gault cases, supra.

In the Kent case, a male person sixteen years old was taken into custody of the Juvenile Court of the District of Columbia for housebreaking, robbery and rape. He had counsel promptly who found out that the Juvenile Court was considering waiving jurisdiction and remitting the juvenile to the United States District Court for the District of Columbia for trial as an adult. Such counsel filed a motion that he be given access to the files of the Juvenile Court relating to his client and a hearing on the question of waiver. Without formal or express action upon the motion, the Juvenile Court entered an order reciting that after full investigation, it waived jurisdiction of the juvenile and directed that he be held for trial for the alleged offenses under the regular procedure of the United States District Court for the District of Columbia. The transfer statute under which the Juvenile Court purport-

---

6. Art. 2338–1, Sec. 16, Vernon's Texas Civil Statutes, provides: "The Court may cause any person coming under its jurisdiction to be examined by a physician, psychiatrist, or psychologist appointed by the court. . . . "

7. The following is quoted from the report of Dr. Ezell, the psychiatrist, who took into consideration the report of the psychologist:
"From my examination of Rodney, it is my opinion that he does not have a psychosis or mental illness. I think his condition represents a character disorder of the type usually termed psychopathic personality or 'sociopathic personality, anti-social type' . . . . "

"From the standpoint of what to do with this boy, I think there is no question but that he will have to be permanently restricted from mixing in society. Whether this is best done through means of a penal institution, or a mental institution, I cannot say. I think the important thing is that it be recognized that treatment and rehabilitation in this instance is not feasible and that these acts could be repeated and that for the welfare of others and for his own welfare Rodney has to be restricted in such a way that he can no longer act out his impulses in a dangerous way. I cannot foresee any change in his personality structure in the future."

ed to act was 11 D.C.Code #1553,[8] which applied only to the District of Columbia. In the District Court, the accused moved to dismiss the indictment on the ground that the order of transfer violated his right to due process under the Fifth Amendment and to effective assistance of counsel under the Sixth Amendment. The motion was denied, and he was tried as an adult and convicted. The case reached the Supreme Court after the accused had appealed directly to the Court of Appeals and had been denied there. The Supreme Court held:

1. The waiver of jurisdiction proceeding in the Juvenile Court was subject to "the basic requirements of due process and fairness, as well as compliance with the statutory requirement[9] of a 'full investigation.'"

2. Due process entitled the juvenile to a meaningful hearing on the question of waiver of jurisdiction and to effective representation by counsel at the hearing.

3. The purposes of the Juvenile Court Act of the District of Columbia required the Juvenile Court to give counsel for the juvenile access to the relevant reports on his client, and to "accompany its waiver order with a statement of the reasons or considerations therefor . . . sufficient to demonstrate that the statutory requirement of 'full investigation' has been met."[10]

4. A valid transfer order was necessary under the District of Columbia statute to give the District Court jurisdiction to try the accused.[11]

5. The proper procedure under the circumstances was not to vacate the conviction and dismiss the indictment, but to remand the case to the District Court for a hearing *de novo* to determine *nunc pro tunc* the propriety of waiving jurisdiction.[12] "If that court finds that waiv-

8. This statute is quoted in the opinion of the Court of Appeals in the Kent case, 343 F.2d 247, at 250. It provides:
   "When a child 16 years of age or over is charged with an offense which if committed by a person 18 years of age or over is a felony, or when a child under 18 years of age is charged with an offense which if committed by a person 18 years of age or over is punishable by death or life imprisonment, a judge may, after full investigation, waive jurisdiction and order the child held for trial under the regular procedure of the court which would have jurisdiction of the offense if committed by a person 18 years of age or over; or the other court may exercise the powers conferred upon the Juvenile Court by this chapter and subchapter I of chapter 23 of Title 16 in conducting and disposing of such cases."

9. The reference is to the requirement in 11 D.C.Code # 1553 quoted in footnote 8. It must be kept in mind that the Kent case was before the Supreme Court on direct appeal from the conviction, and that the Court was therefore considering some questions of compliance with statutory requirements which would not have been noticed if the case had been before it on collateral attack on the conviction.

10. 383 U.S., at 561, 86 S.Ct. 1045, at 1057, 16 L.Ed.2d 84.

11. " . . . . Kent was then 16 and therefore subject to the 'exclusive juris-

diction' of the Juvenile Court, D.C.Code § 11–907 (1961), now § 11–1551 (Supp. IV., 1965) . . . .
543, 86 S.Ct. at 1048. (Emphasis added).
" . . . . The *statutory scheme* makes this plain. The Juvenile Court is vested with 'original and exclusive jurisdiction' of the child . . . . " 383 U.S., at 556, 86 S.Ct. at 1055. (Emphasis added).
" . . . . The *Juvenile Court Act* confers upon the child a right to avail himself of that court's 'exclusive' jurisdiction . . . . " 383 U.S., at 560, 86 S.Ct. at 1057. (Emphasis added).

12. The reason for not remanding the case to the Juvenile Court for a retroactive determination of the question of waiver appears in the following quotation from the opinion, 383 U.S., at 564, 86 S.Ct. at 1059:
   "Ordinarily we would reverse the Court of Appeals and direct the District Court to remand the case to the Juvenile Court for a new determination of waiver. If on remand the decision were against waiver, the indictment in the District Court would be dismissed. See Black v. United States, supra. However, petitioner has now passed the age of 21 and the Juvenile Court can no longer exercise jurisdiction over him. In view of the unavailability of a redetermination of the waiver question by the Juvenile Court, it is urged by petitioner that the conviction should be vacated and the indictment dismissed. In

er was inappropriate, petitioner's conviction must be vacated. If, however, it finds that the waiver order was proper when originally made, the District Court may proceed, after consideration of such motions as counsel may make and such further proceedings, if any, as may be warranted, to enter an appropriate judgment." 383 U.S., at 565, 86 S.Ct. at 1059.

The Kent case dealt with the due process question only insofar as it related to juvenile court proceedings involving waiver of jurisdiction. The Gault case re-affirmed what had been said in Kent, and held that due process principles applied to the adjudicatory stage of juve-

nile court proceedings as well, if commitment to a state institution might follow. Specifically, it held that due process, as applied to such proceedings, required a hearing, held after sufficient notice to the juvenile and his parents advising them of the precise issues they would have to meet, with the right to be represented at all critical stages by employed or court appointed counsel.

■ It is clear that the circumstances under which the order of the Juvenile Court waiving jurisdiction of Broadway was entered did not satisfy the due process requirements laid down by Kent and Gault. It is equally clear, however, that under Texas law,[13] unlike that of

the circumstances of this case, and in light of the remedy which the Court of Appeals fashioned in Black, supra, we do not consider it appropriate to grant this drastic relief  . . . . "

The remedy does not become material in the present case unless the appellate court disagrees with this Court's holding that the Criminal District Court had jurisdiction to try Broadway without a valid order of transfer from the Juvenile Court; but petitioner's objections to a *nunc pro tunc* determination of the propriety of waiver will be noticed briefly at this point so that the Court's views thereon will be of record in the event the question of remedy becomes material. The petitioner says: (1) A remand for such a hearing is not a fair remedy because the lower court could not help but be influenced by the fact that petitioner had been convicted. (2) If there is a remand for such a hearing, it should be to the Juvenile Court.

The Kent case, in itself, is a complete answer to both those objections. See also Kemplen v. Maryland, 4 Cir., 428 F.2d 169 (1970). In addition, a remand for a *de novo* hearing to determine a question *nunc pro tunc* is a remedy which has been frequently used by the federal appellate courts. Among the cases where the Supreme Court has ordered such a remand are: Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), for the judge to determine the voluntariness of a confession; and Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and a number of other cases decided the same day to determine whether there had been electronic surveillance by the government which violated the constitutional rights of

the defendants. There are a number of cases by the Court of Appeals for the Fifth Circuit which have followed the Jackson and the Alderman decisions on remedy. A case by that Court involving a question other than confession or electronic surveillance, which was remanded only for the limited purpose of a *de novo* hearing to determine a question *nunc pro tunc*, was Llewellyng v. United States, 5 Cir., 320 F.2d 104, 106, where the Court said:

"We think that the court erred in refusing to grant the defendant's motion for a psychiatric examination before trial. That does not mean that the defendant is entitled to have his sentence vacated or reversed, for his mental competency is subject to *nunc pro tunc* determination  . . ."

 . Courts are entitled to credit for having a better objective viewpoint than the petitioner is willing to concede. If the fact that a defendant had been convicted made a judge unable to pass fairly on questions in his case, appellate judges would never be able to reach a fair decision in a criminal case, as they never review such cases unless there has been a conviction.

Broadway was twenty-one years old on August 24, 1970; so, under the rule in the Kent case, the Juvenile Court would have no jurisdiction over him now. If a *de novo* hearing were necessary to make a *nunc pro tunc* determination on the appropriateness of waiver of jurisdiction in 1966, that hearing would have to be held in the Criminal District Court in which he was tried.

13. Unless otherwise indicated, the discussion of the Texas law will be of that which was in effect in 1966, the year in which all of the court proceedings affecting Broadway took place.

the District of Columbia, the Criminal District Court's authority to try Broadway after he became seventeen was not dependent upon a valid waiver and transfer order of the Juvenile Court for the following reasons:

1. After Broadway became seventeen years old, the Juvenile Court had no jurisdiction over him for any proceedings against him based on the transaction involving Mrs. Kennemer.

2. Broadway was seventeen years old at the time he was tried, and the Criminal District was the only court which had jurisdiction over him at that time in criminal proceedings growing out of the rape of Mrs. Kennemer. That was true even though the rape had been committed when he was sixteen.

3. Broadway's age at the time of his trial, rather than at the time of the commission of the rape, was the controlling factor insofar as the respective jurisdictions of the Criminal District Court and the Juvenile Court were concerned.

4. Broadway waived any right he had to complain by not raising the question

in his trial in the Criminal District Court.

The age at which a person could be proceeded against as an adult in Texas in 1966 for his acts in violation of the penal laws of the state was within the range of that generally adopted by most of the other jurisdictions in this country. The Juvenile Deliquency Act [14] conferred jurisdiction on the juvenile courts to proceed against persons as juvenile delinquents on account of their penal acts if they were within the age limits provided in Section 3 thereof.[15] Those limits were over ten and under eighteen years in case of female persons, and over ten and under seventeen years in case of male persons. The only authority a juvenile court had over a person above the upper age limits of the statute was to enforce the provisions of a judgment declaring the person to be a juvenile delinquent and providing for a commitment which covered some of the period between the upper age limit and twenty-one years of age.[16] To have even that authority, however, the juvenile court had to make an adjudication of ju-

14. This Act is codified as Article 2338–1, Vernon's Texas Civil Statutes.

15. Article 2338–1, Section 3, as amended in 1965 and as in force in 1966, provided:
"Definitions
"Section 3. The word 'court' means the Juvenile Court. The word 'Judge' means the Judge of the Juvenile Court. The term 'delinquent child' means any female person over the age of ten (10) years and under the age of eighteen (18) years and any male person over the age of ten (10) and under the age of seventeen (17) years, except as provided in Section 6 of this Act, who
"(a) violates any penal law of this State of the grade of felony; or
"(b) violates any penal law of this State of the grade of misdemeanor where the punishment prescribed for such offense may be by confinement in jail; or
"(c) habitually violates any penal law of this State of the grade of misdemeanor where the punishment prescribed for such offense is by pecuniary fine only; or
"(d) habitually violates any penal ordinance of a political subdivision of this State; or

"(e) habitually violates a compulsory school attendance law of this State; or
"(f) habitually so deports himself as to injure or endanger the morals or health of himself or others; or
"(g) habitually associates with vicious and immoral persons."

16. By way of illustration, a juvenile court could declare a sixteen year old person to be a juvenile delinquent and provide for commitment for an indeterminate period not extending beyond the time the person should reach twenty-one years of age. Article 2338–1, Section 13(c) (2), Vernon's Texas Civil Statutes. In such a case, the court would have jurisdiction over the delinquent, insofar as the acts forming the basis of the adjudication were concerned, until he became twenty-one. For instance, the court would have the power to act if there were a question of parole violation at any time before reaching twenty-one. However, as is pointed out in another portion of the opinion, the adjudication of delinquency would have to take place before the person reached the upper age limits provided in Section 3.

venile delinquency before the juvenile reached the upper age limits provided in Section 3. If there was no such adjudication, that court lost jurisdiction over the person. Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269; State v. Ferrell, Tex.Civ.App., 209 S.W.2d 642, err. ref. n. r. e.; Dillard v. State, Tex.Civ.App., 439 S.W.2d 460, err. ref. n. r. e.; 19 Tex.Jur.2d, pp. 566, 567.

The following is quoted from 19 Tex. Jur.2d, pp. 565–566:

". . . . But before a child may be declared to be 'delinquent', two *jurisdictional* elements must be clearly present; first, *he must be within the age limits prescribed by the statute*; secondly, he must have committed one of the acts designated in the statute . . ." (Emphasis added).

Dillard v. State, supra, is directly in point with this case on the controlling facts. In that case, a petition was filed in a juvenile court to have Dillard adjudged to be a juvenile delinquent on account of two murders and two assaults to murder he was alleged to have committed when he was sixteen years old. A motion filed by the State asking the juvenile court to waive jurisdiction of Dillard and certify him to the district court to be tried on felony charges was granted after a hearing when he was still sixteen. There was never an adjudication of delinquency. Dillard was indicted in the district court for each of the alleged offenses before he reached seventeen; but the indication is that trials thereunder were withheld pending his appeal to the Court of Civil Appeals from the order of waiver of jurisdiction.[17] Dillard became seventeen before the appeal could be heard; and the State filed a motion to dismiss on the ground that the juvenile court lost jurisdiction over Dillard when he became seventeen, and therefore any errors of that court had become moot. In sustaining the State's contention, the Court said:

"The State of Texas, appellee, contends that as of February 7, 1969, on which day the appellant juvenile became 17 years of age, these causes became moot. The State contends that appellant cannot now be tried as a juvenile, and consequently this appeal and all orders entered by the trial court should be dismissed." (p. 461)

\* \* \* \* \* \*

"Thus, Article 2338–1, Sec. 5 requires that the juvenile court adjudge a child to be a 'delinquent' child before its jurisdiction of him continues until he is 21 years of age. It is the adjudication of delinquency which extends the court's jurisdiction. As was said in Lazaros v. State, 228 S.W.2d 972, 975 (Tex.Civ.App.), no writ hist.:

" 'When the trier of the facts found Billy a delinquent child, he automatically came under such (juvenile) court's jurisdiction until he should reach the age of 21 years \* \* \*' " (Parenthesis added). (p. 461).

\* \* \* \* \* \*

"Appellant, having been 16 years and more than 7 months of age when the hearing on transfer and waiver was held, and now being 17 years of age, may be tried for the alleged offenses as an adult in district court. The juvenile court has no further power to act in these cases. See State v. Ferrell, 209 S.W.2d 642, 644 (Tex. Civ.App.), writ ref., n. r. e.

"We hold that the cases are now moot, and all previous orders are set aside. The juvenile cases are dismissed. See Guajardo v. Alamo Lumber Company, 159 Tex. 225, 317 S.W. 2d 725." (p. 462).

17. Some of the decisions involving questions under the Texas Juvenile Delinquency Act are by the civil appellate courts (Courts of Civil Appeals and Supreme Court) and others are by the Court of Criminal Appeals, the state court of last resort in criminal cases. This is due to the fact that some of the appeals are from judgments of the juvenile courts, which are civil courts, and others are from convictions in criminal cases.

\* \* \* \* \* \*

The following is quoted from the concurring opinion:

". . . . The defendant here became 17 years of age on February 7, 1969 and any disposition of these juvenile cases would now occur during or after his 17th year. It necessarily follows that the instant juvenile cases are moot, and, this being true, errors occasioned in the juvenile court are of no consequence. This is true even though on October 31, 1968, while the defendant was still 16 years of age, the Grand Jury returned felony indictments in each of the alleged offenses." (p. 462).

State v. Ferrell, supra, was an appeal by the State from a judgment of a juvenile court decreeing that Mary Ferrell was not a juvenile delinquent on account of having shot and killed her husband. She was under the age of eighteen years at the time of the adjudication, but she reached her eighteenth birthday during the pendency of the appeal. The judgment was reversed on account of erroneous instructions to the jury. In its disposition of the case, the Court of Civil Appeals had this to say in pointing out that the juvenile court had lost jurisdiction of the person:

"It appears from the record that Mrs. Ferrell is past eighteen years of age at the time this opinion is written. The juvenile court no longer has jurisdiction to maintain the present proceeding. If she is tried at all, it will have to be in a criminal court of proper jurisdiction. The jurisdiction of the juvenile court depends on the age of the child at the time the case is tried, not the age at the time the offense was committed. Hardie v. State, 140 Tex.Cr.R. 368, 144 S.W.2d 571; Dendy v. Wilson, cited supra, loc. cit., 142 Tex. 460, 179 S.W.2d 269, 275, 151 A.L.R. 1217; annotation in 123 A.L.R. 446.

"It is therefore ordered that the judgment of the trial court be reversed, and that the case be remanded to the trial court with instructions to dismiss delinquency proceeding." (209 S.W. 2d pp. 644, 645).

Since there was never an adjudication that Broadway was a juvenile delinquent on the basis of the transaction involving Mrs. Kennemer, that court lost jurisdiction of him as to such matter when he became seventeen years old on August 14, 1966. At the time of his trial for rape in October, 1966, he was seventeen years old, and the district court was the only court which had jurisdiction to try him for his felonious acts. That jurisdiction was to try him as an adult even though the offense itself was committed while he was sixteen. That this principle is supported by the decisions of the respective state courts of last resort in both civil and in criminal cases is evidenced by the following quotation from Dearing v. State, Tex.Cr.App., 204 S.W. 2d 983, 986:

"In the case of Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269, 275, 151 A.L.R. 1217, the Supreme Court, touching the question under consideration, said, that the Section just quoted implied 'that if the defendant is above the statutory age limit at the time of trial; even though the act upon which the prosecution is based was committed while the defendant was within the age limits, the courts can try him for crime.' This interpretation of the language of the Act [18] is fortified by the fact that the Court of Criminal Appeals has always held that the age at the time of trial is the controlling factor. See McLaren v. State, 85 Tex.Cr.R. 31, 209 S.W. 669; Walker v. State, 119 Tex.Cr.R. 330, 45 S.W.2d 987; Stallings v. State, 129 Tex.Cr.R. 300, 87 S.W.2d 255; Hardie v. State, 140 Tex.Cr.R. 368, 144 S.W. 2d 571. With this construction of Section 12 of said Act, we are in ac-

18. This footnote is supplied to show that the "Act" being discussed in the Dearing case was the Juvenile Delinquency Act.

cord. Such seems to be the logical conclusion to be drawn from the language of said section of said Act."

To the authorities cited in the quotation above from Dearing v. State could be added many later cases, including: Roberts v. State, Tex.Cr.App., 219 S.W. 2d 1016; Peterson v. State, Tex.Cr.App., 235 S.W.2d 138; Perry v. State, Tex.Cr. App., 350 S.W.2d 21; Hultin v. State, Tex.Cr.App., 351 S.W.2d 248; Lopez v. State, Tex.Cr.App., 352 S.W.2d 106; Foster v. State, Tex.Cr.App., 400 S.W.2d 552; and Ex parte Miranda, Tex.Cr. App., 415 S.W.2d 413.

As is stated in the latter part of the quotation just above, the age of the ac-

cused at the time of the trial, and not at the time of the commission of the act, is the controlling factor insofar as the respective jurisdictions of the juvenile court and the district court are concerned. In addition to the Dearing case and the authorities cited in connection with it, see 19 Tex.Jur.2d, p. 567; State v. Ferrell, supra and Dillard v. State, supra.[19] The Juvenile Delinquency Act itself, Article 2338–1, Section 12,[20] makes the time of the trial the test for determining jurisdiction by reason of age. The reason for the rule is stated in the Dearing case.[21]

The petitioner claims that Section 5 [22] of the Juvenile Delinquency Act gave the

---

19. "Nevertheless, the courts of this state have uniformly and historically held that the age of a juvenile defendant at the time of trial is controlling rather than at the time of the alleged offense. . . ." 439 S.W.2d, at 462.

20. "Section 12. If during the pendency of a criminal charge or indictment against any person in any court other than a Juvenile Court, it shall be ascertained that said person is a female over the age of ten (10) years and under the age of eighteen (18) years, or is a male person over the age of ten (10) years and under the age of seventeen (17) years *at the time of the trial* for the alleged offense, it shall be the duty of such court *to transfer such case immediately together with all papers, documents and testimony connected therewith to the Juvenile Court of said county* unless said person is being held under authority of Section 6 of this Act as amended by Section 3 hereof. The court making such transfer shall order the child to be taken forthwith to the place of detention designated by the Juvenile Court, or to that court itself, or to release such child to the custody of a probation officer or any suitable person to appear before the Juvenile Court, or the probation department of said county at a time designated. The Juvenile Court shall thereupon proceed to set said case for hearing and to dispose of such case in the same manner as if it had been instituted in that Court in the first instance." (Emphasis added).

21. "To hold that a male child who committed an offense two days, two weeks, or two months prior to the time that he became

17 years of age could not be prosecuted for said offense after he reached his 17th year would be creating a haven of refuge for the criminally inclined. It would be destructive to the social fabric of orderly society. Such a doctrine, we are unwilling to announce. On the other hand, to hold that a boy who committed a heinous offense before he became 17 years of age could not be tried for that offense after he arrived at the age of 17 could be equally as bad. Orderly society is entitled to protection as well as a delinquent child." 204 S.W.2d, at p. 986.

22.

"Jurisdiction

"Section 5. The Juvenile Court shall have exclusive original jurisdiction in proceedings governing any delinquent child, and such Court shall be deemed in session at all times.

"Nothing contained herein shall deprive other courts of the right to determine the custody of children upon writs of habeas corpus, or when such custody is incidental to the determination of causes pending in such courts.

"When jurisdiction shall have been obtained by the Juvenile Court in the case of any delinquent child, such child shall continue under the jurisdiction of the Court until he is discharged by the Court or until he becomes twenty-one (21) years of age unless committed to the control of the agency of the State charged with the care, training, control of, or parole of delinquent children. Such continued jurisdiction shall, however, in no manner prejudice or constitute a bar to subsequent or additional proceedings against such child under the provisions of this Act."

juvenile court exclusive original jurisdiction over male and female persons within the age limits of the Act, and that after such jurisdiction attached the district court could acquire jurisdiction only through a valid waiver and transfer order of the Juvenile Court issued under Section 6 [23] of the Act.

The language of Section 5, if strictly construed and without reference to the other provisions of the Act,[24] was in direct conflict with Articles 30 and 31, Vernon's Texas Penal Code.[25] Texas cases had consistently held that the effect of those statutes was to say that, as to age, the courts of general jurisdiction had authority to try any person other than those excepted by the statutes. Section 24 of the Act repealed certain existing laws, but Articles 30 and

23. Article 2338-1, Section 6, as amended in 1965 and as in force in 1966, provides:
"Section 6. A transfer may be made of cases from one Juvenile Court to another Juvenile Court where a child under the jurisdiction of one Juvenile Court has moved from one county to another, and where it is to the best interests of such child so to do. The Juvenile Court having jurisdiction of a child may transfer the case to the Juvenile Court of the county in which the child may be then residing, and shall send transcripts of records to the Judge of the other Court, which shall be filed in the office of the clerk of such Court.
"If a child sixteen (16) years of age or older is charged with an offense which would be a felony if committed by an adult and if the Court, after diagnostic study, social evaluation and full investigation, deems it contrary to the best interest of such child or the public to retain jurisdiction, the Court may, in its discretion, certify such child for proper criminal proceedings in any court which would have jurisdiction of the offense, if committed by an adult; but no child under sixteen (16) years of age at the time the offense is committed shall be so certified and no child under sixteen (16) years of age at the time the offense is committed shall be prosecuted as an adult at any later date unless transferred by the Juvenile Court, and all such offenses committed by children not so transferred shall be subject to disposition by the Juvenile Court only. Such certification shall include the written order and findings of the Juvenile Court and shall be accompanied by a complaint against the accused in accordance with applicable provisions of the Code of Criminal Procedure of the State of Texas.
"Upon certification to the District Judge having jurisdiction under the provisions of this Act, the District Judge shall have the powers and duties conferred upon examining magistrates by Chapter 3 of the Code of Criminal Procedure of the State of Texas. Provided that upon hearing the District Judge shall make an order committing the child to jail, discharging him, admitting him to bail, or remanding him to the custody of the Juvenile Court as the law and facts of the case may require. Provided further that if the child is held or bound over for action by the Grand Jury, the Grand Jury may return an indictment for the offense charged or may recommend that the child be remanded to the custody of the Juvenile Court. If the Grand Jury recommends that the child be returned or remanded to the custody of the Juvenile Court, no further action by the Grand Jury or future Grand Jury can be taken against the child in regard to the offense charged or the acts for which the child stood accused and which were investigated by the Grand Jury. If the Grand Jury returns an indictment, the child shall be subjected to the penal laws of this State and tried in accordance with the Penal Code and the Code of Criminal Procedure as if the child were an adult."

24. The reference is to Section 12, quoted in footnote 20, which makes the age "at the time of the trial" the controlling factor on jurisdiction of the person.

25. Those statutes provide:
Article 30. "No person can be convicted of any offense committed before he was nine years old except perjury;' and for that only when it shall appear by proof that he had sufficient discretion to understand the nature and obligation of an oath; nor of any other offense committed between the age of nine and thirteen, unless it shall appear by proof that he had discretion sufficient to understand the nature and illegality of the act constituting the offense."
Article 30 was amended in 1967; the above quotation shows it as it was in 1966.
Article 31. "A person for an offense committed before he arrived at the age of seventeen years shall in no case be punished with death."

31, P.C., were not among them. This question has been before the Supreme Court and the Court of Criminal Appeals several times. Dendy v. Wilson,[26] supra, 179 S.W.2d at p. 275; Dearing v. State,[27] supra, 204 S.W.2d at p. 986; Hultin v. State, supra, 351 S.W.2d at p. 253. Those cases hold that:

(1) Texas does not favor repeal of its statutes by implication, and therefore Articles 30 and 31 of the Penal Code were not repealed by the Juvenile Delinquency Act.

(2) Articles 30 and 31, Penal Code, and the Juvenile Act should be construed so as to reconcile them and to uphold all of them, rather than to strike down some or all of them. This may be accomplished only by holding that the Act supplements, but does not repeal Articles 30 and 31 of the Penal Code; and that the district court has exclusive jurisdiction to try a person as an adult when he or she passes the maximum age limits prescribed in Section 3 of the Act, even though the alleged offense was committed prior to reaching such age.

If petitioner's argument in this connection were correct, the courts never would have held, after passage of the Juvenile Delinquency Act, that a male person over seventeen years and a female person over eighteen years could be tried as an adult for acts committed while sixteen years old. All of the cases cited on that point, beginning with

26. " . . . . At the outset, it is to be noted that the Act itself does not purport to repeal the provisions of the Penal Code with respect to offenses committed by minor children. Repeal of laws by implication is not favored. Wintermann v. McDonald, 129 Tex. 275, 102 S.W.2d 167, 104 S.W.2d 4; Ash v. State, 134 Tex.Cr.R. 208, 114 S.W.2d 899; Townsend v. Terrell, 118 Tex. 463, 16 S.W.2d 1063. In Wintermann v. McDonald, supra [120 Tex. 275, 102 S.W.2d 171] it was said: 'In the absence of an express repeal by statute, where there is no positive repugnance between the provisions of the old and new statutes, the old and new statutes will each be construed so as to give effect, if possible, to both statutes.' The Court of Criminal Appeals held that Article 5143a, Section 1, Vernon's Annotated Civil Statutes, which defined the age of a delinquent child the same as in this Act, did not expressly repeal Article 30 of the Penal Code. Flannery v. State, 135 Tex.Cr.R. 235, 117 S.W.2d 1111.

"The Constitution of Texas gives the Court of Criminal Appeals appellate jurisdiction of all criminal cases. Section 5 of Article V of the Constitution. That court has not construed this Act, and this court is compelled to construe same in the light of the opinions of the Court of Criminal Appeals.

"Section 12 of the Act provides that a pending criminal case shall be transferred to the juvenile court when it appears that the defendant is within the statutory age limits at the time of trial; thus implying that if the defendant is above the statutory age limit at the time of trial, even though the act upon which the prosecution is based was committed while the defendant was within the age limits, the courts can try him for crime. This interpretation of the language of the Act is fortified by the fact that the Court of Criminal Appeals has always held that the age at the time of the trial is controlling. . . . " 179 S.W.2d, at p. 275.

27. "Before we begin a discussion of the question of jurisdiction, we deem it proper to here state that the Juvenile Act passed by the 48th Legislature did not repeal Art. 30, P.C., which reads as follows: 'No person shall be convicted of any offense committed before he was nine years old except perjury, and for that only when it shall appear by proof that he had sufficient discretion to understand the nature and obligation of an oath; nor of any other offense committed between the age of nine and thirteen, unless it shall appear by proof that he had discretion sufficient to understand the nature and illegality of the act constituting the offense.' "

"Neither did it repeal Art. 31, P.C., which reads as follows: 'One under 17 not punishable capitally. A person for an offense committed before he arrived at the age of seventeen years shall in no case be punished with death.'

"With these Articles remaining in force and effect, they should be considered and construed in connection with the Juvenile Act so as to uphold both statutes, if possible, rather than to strike down either, or both." 204 S.W.2d at pp. 895–896.

Dendy v. Wilson in 1944 and going through Ex parte Miranda in 1967, cover the entire period following the passage of the Act in 1943 through the year 1966 in which Broadway was tried. They are consistent with the principle that the Criminal District Court had jurisdiction to try Broadway as an adult after he became seventeen for a charge based on an act committed by him when he was sixteen. As was said in Hultin v. State, supra:

> "Appellant's second contention may be answered by the observation that Art. 2338–1, V.C.S., does not give to a juvenile a vested right to be tried immediately following the commission of an offense. It merely provides that if he or she is proceeded against before reaching the age of 17 or 18, respectively, such proceedings shall be in the Juvenile Court. . . ." 351 S.W.2d, at p. 256.

██ A person has no constitutional right to be tried as a juvenile at any certain age. Kent v. United States, 119 U.S.App.D.C. 378, 343 F.2d 247, 256 (1956), reversed on other grounds, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84. The juvenile court system is of statutory origin in most jurisdictions. Constitutionally, the legislature generally has the power to grant or deny privileges to minors. George v. United States, 9 Cir., 196 F.2d 445, 453 (1952). "[T]he test of responsibility rests rather in his discretion and power to discriminate right from wrong, and to comprehend the consequences of his acts, than on the mere question of age." 43 C.J.S. Infants § 95 p. 212. Beyond the age where a person might be presumed to be incapable of committing a crime, it is up to the legislature to set the age of responsibility as an adult for crimes committed. The variance in ages fixed by the different jurisdictions is evidence of the fact that legislatures have some discretion in the matter.

The petitioner contends that even though the Criminal District Court would have otherwise had jurisdiction to try him as an adult after he became seventeen years old, it nevertheless lacked such jurisdiction in this case because the indictment against him was returned when he was still sixteen. This contention is answered by the decisions in the following cases, all decided after the passage of the Juvenile Delinquency Act, which hold that the felony conviction in this State of a sixteen year old person is only voidable, and not void, and is therefore not subject to collateral attack. Ex parte Huddleston, 149 Tex.Cr. App. 388, 194 S.W.2d 401; Ex parte Munoz, 152 Tex.Cr.App. 413, 209 S.W.2d 767; Taylor v. State, 172 Tex.Cr.App. 45, 353 S.W.2d 422; Slaton v. State, Tex.Cr. App., 418 S.W.2d 508.

The recent case of Slaton v. State, supra, says pointedly:

> ". . . . We further note that a felony conviction of a sixteen year old Texas defendant is not void. Taylor v. State, 172 Tex.Cr.R. 45, 353 S.W.2d 422, and cases therein cited." 418 S.W.2d, at p. 512.

The following is quoted from Taylor v. State, also a recent case:

> "The trial court's finding that appellant was in fact 17 years of age at the time of his trial cannot be sustained in view of the evidence mentioned. However, the state correctly contends that the court was not bound to set aside the conviction upon a showing after the trial and after probation had been granted and revoked, that appellant was of juvenile age and not 17, as he represented to the court at his trial. Ex parte Huddleston, 149 Tex.Cr.R. 388, 389, 194 S.W.2d 401; Ex parte Munoz, 152 Tex. Cr.R. 413, 415, 209 S.W.2d 767; Rice v. State, 137 Tex.Cr.R. 21, 127 S.W.2d 889; Valdez v. State, 98 Tex.Cr.R. 166, 265 S.W. 161; and Fifer v. State, 90 Tex.Cr.R. 282, 234 S.W. 409." 353 S.W.2d, at p. 424.

The case of Rice v. State, 137 Tex. Cr.R. 21, 127 S.W.2d 889, cited in the

above quotation from the Taylor case, says:

"In Valdez v. State, 98 Tex.Cr.R. 166, 265 S.W. 161, 162, it was held that, in the absence of some fraud perpetrated against the accused, ordinarily the question of juvenility could not be raised for the first time in motion for new trial. In speaking for the court, Judge Hawkins used language as follows: 'The question is one of preliminary character to be presented to and passed upon by the trial judge upon proper sworn statement before plea to the indictment is entered.' See Robertson v. State, 92 Tex.Cr.R. 350, 243 S.W. 1098." 127 S.W.2d, at p. 890.

The quotation on page 19 hereof from the concurring opinion in Dillard v. State, decided by a Texas Court of Civil Appeals in 1969, is also applicable here. Judge Johnson had mentioned in his opinion, just prior to the language in the above mentioned quotation, that there was fundamental error in the juvenile court's order of waiver and transfer. In the language quoted, he went on to say that because of the fact that the juvenile had become seventeen while the case was on appeal: " . . . . It necessarily follows that the instant juvenile cases are moot, and, this being true, errors occasioned in the juvenile court are of no consequence. This is true even though on October 31, 1968, while the defendant was still 16 years of age, the

Grand Jury returned felony indictments in each of the alleged offenses." 439 S.W.2d, at p. 462.

If a felony conviction of a sixteen year old person in Texas is only voidable, the same would have to be said about an indictment; for there could be no such conviction without an indictment.

■ In addition, the petitioner waived the right to complain about the return of the indictment shortly before he became seventeen by not raising it preliminarily at the trial. The right to be tried as a juvenile was only statutory. Proceedings against a sixteen year old as an adult in a district court were only voidable. At most, petitioner's contention raises only a question of jurisdiction of the person; and that question was subject to waiver if not raised at the proper time. Fairbanks Steam Shovel Co. v. Willis, 240 U.S. 642, 649, 36 S.Ct. 466, 60 L.Ed. 841; Redditt v. Hale, 8 Cir., 199 F.2d 386, 391 (1952); In re Martinez, 10 Cir., 241 F.2d 345, 348 (1957); Federal Underwriters Exchange in Pugh, 141 Tex. 539, 174 S.W.2d 598, 600.[28] Almost any lawyer who has had wide experience in the trial of criminal cases knows that it is advantageous to try some cases involving sixteen year old persons in the juvenile court, while it is better to try other such cases in the district court where the person is proceeded against as an adult.[29]

---

28. The following quotations are from the cases cited.

"It is well settled that substantive jurisdiction of the Federal courts, that is, their power to adjudicate, cannot be created by consent or waiver. On the other hand, want of jurisdiction of the person or thing may be waived." *Martinez*, 241 F.2d, at p. 349.

" . . . It is elementary law that the lack of jurisdiction of the person can be waived and can not be raised for the first time on appeal, *much less relied upon in a collateral proceeding.* . . . " Redditt, 199 F.2d, at p. 391. (Emphasis added).

29. This is recognized by the federal statute on juvenile delinquency which leaves the choice of being tried as an adult or as a juvenile up to the accused. 18 U.S.C.A. Section 5032, provided:

"A juvenile alleged to have committed one or more acts in violation of a law of the United States not punishable by death or life imprisonment, and not surrendered to the authorities of a state, shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion, has expressly directed otherwise.

"In such event the juvenile shall be proceeded against by information and no

In the district court, the defense lawyer can argue that a conviction will brand the young person as a felon and that confinement will be with older criminals. In the juvenile court, the jury is told by the State that the proceeding is not criminal in nature, and that the aim is not to convict the defendant, but to get an adjudication of delinquency which will enable the judge to fashion a decree that will afford some chance of rehabilitation. A jury is much more hesitant to decide a case against a young person in a felony trial in the district court than in a delinquency proceeding in the juvenile court. With the kind of lawyers the petitioner had, it cannot fairly be concluded that they completely overlooked the indictment question. It is much more reasonable to conclude that they considered the matter and decided that there was a much better chance to get their client off in the district court. Whether they did so or not, the failure to raise the question was a waiver of the right to complain about it, and it cannot now be raised on collateral attack.

For all of the reasons stated, the authority of the Criminal District Court No. 3 of Tarrant County, Texas, to try Broadway as an adult was not dependent upon a valid juvenile court order of waiver of jurisdiction. There is no necessity, therefore, to remand the case to such Criminal District Court for a *de novo* hearing to determine *nunc pro tunc* the appropriateness of such a waiver order on March 3, 1966. The application for writ of habeas corpus will be accordingly denied, and an order to that effect will be entered.

This opinion will serve as the Court's findings of fact and conclusions of law. Rule 52(a), F.R.Civ.P.

---

criminal prosecution shall be instituted for the alleged violation."

There would be no need in having such a statute if the advantages to the juvenile in being tried as a juvenile or as an adult did not vary in different cases.